SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

### State v. Bryden Robert Williams (A-5-12) (070388)

**Argued March 4, 2014 -- Decided August 6, 2014**

**ALBIN, J., writing for a unanimous Court.**

In this appeal, the Court considers whether the admission of testimony from a pathologist who did not perform the victim's autopsy violated defendant's right of confrontation under the Sixth Amendment of the United States Constitution or Article I, Paragraph 10 of the New Jersey Constitution.

On the evening of September 2, 2006, Joel Whitley, Omar Boyd, and Boyd's girlfriend attended a party at Dynesha Gibson's apartment. Whitley became intoxicated and involved in an altercation with another party guest, and was asked to leave. A short time later, Whitley realized he had left his cell phone at the party, and he and Boyd went back to retrieve it. Gibson refused to return the phone and Whitley started kicking the apartment's front door. Gibson told Whitley and Boyd that they should leave before defendant arrived. As Whitley and Boyd were leaving, defendant arrived. He exited his car and, armed with a handgun, aimed it at Boyd and said, "What's the problem?" After Gibson yelled from the window that Whitley had "disrespected" either her or her sister, defendant put the gun to Whitley's head and forced him into an adjacent alley. Defendant then pointed the gun at Whitley's chest and fired once, killing him.

Defendant was charged with murder and related weapons offenses. At trial, defendant asserted that he acted in self-defense. He claimed that when he arrived at Gibson's apartment, he saw Whitley banging on the apartment's door and told him to get off the porch. As Whitley stepped off of the porch, defendant claimed that Whitley pulled out a gun and pointed it toward him. Defendant claimed that he struggled with Whitley and that as they wrestled, a single shot was fired with the gun still in Whitley's hand. Defendant stated that he never touched the gun's handle and was trying to disarm Whitley when the gun fired.

Dr. Zhongxue Hua, the Chief Medical Examiner of Union County and an expert in forensic pathology, testified as to the cause and manner of Whitley's death. Dr. Hua did not perform or assist in the autopsy, which was conducted by Dr. Leonard Zaretski, Union County's Chief Medical Examiner at the time of Whitley's death. Dr. Zaretski was not called as a witness, and defendant did not object to Dr. Hua's testimony or qualifications. Based on his review of the autopsy report, photographs, the victim's clothing, and a State Police Laboratory report, Dr. Hua stated that he was able to reach independent conclusions about both the manner and cause of Whitley's death. He stated that the manner of death was homicide and that the cause of death was a bullet that entered the left side of Whitley's chest and moved downwards, damaging his heart and a major artery. No defensive wounds or gunpowder burns or residue were found on the victim's body.

On cross-examination, defense counsel pursued a line of questioning consistent with a theory of self-defense. Based on gunpowder residue discovered on Whitley's clothing, defense counsel elicited from Dr. Hua that the gun was fired several inches away from Whitley. Defense counsel also had Dr. Hua explain that the bullet took a downward path through Whitley's body. In response to defense questioning, Dr. Hua stated that if Whitley had been holding the gun's handle when it discharged, gunpowder residue would have been found on his hand, but that Dr. Zaretski's report did not indicate whether he tested Whitley's hand for gunpowder residue. Ultimately, the jury rejected self-defense as a justification for the shooting and found defendant guilty of all charges. Defendant appealed, claiming that his right to confrontation had been violated.

In an unpublished opinion, the Appellate Division rejected defendant's claim. Although the panel noted that defendant did not object at trial to Dr. Hua's testimony, it nevertheless addressed the merits of defendant's confrontation argument. The panel reasoned that Dr. Hua's testimony did not run afoul of the Confrontation Clause because he testified about his own independent findings based, not only on Zaretski's report, but also on the photographs of the autopsy and his personal examination of Whitley's clothing. This Court granted certification,

1

limited to whether the admission of the testimony by the pathologist who did not perform the autopsy violated defendant's right of confrontation. 212 N.J. 103 (2012).

**HELD**: Defendant's failure to object to the admission of the testimony on confrontation grounds and his decision to cross-examine the medical examiner constitute a waiver of his right of confrontation.

1.      The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that the accused in a criminal trial has the right to be confronted with the witnesses against him. The Confrontation Clause prohibits the use of out-of-court testimonial hearsay, untested by cross-examination, as a substitute for in-court testimony. The right of confrontation may be waived by the accused, as the Constitution does not compel a criminal defendant to insist that the State call a live witness who might damage his case. Because counsel and the defendant know their case and their defenses, they are in the best position to make the tactical decision whether to raise a Confrontation Clause objection. Therefore, defendant always has the burden of raising his Confrontation Clause objection. (pp. 10-11)

2.      Where, however, the failure to object is so patently unreasonable and so clearly erroneous that no rational counsel acting within the wide range of professional norms would pursue such a course, a trial court may take notice of such an error. This is true even when the error has not been brought to the court's attention by a party. When a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy – a strategy not unreasonable on its face but one that did not result in a favorable outcome – his claim may be barred by the invited-error doctrine. The doctrine is grounded in considerations of fairness, but will not apply automatically if to do so would cause a fundamental miscarriage of justice. (p. 11)

3.      Here, when the State offered Dr. Hua as an expert in the field of forensic pathology, defense counsel made no objection. Defendant then proceeded to extract favorable testimony from Dr. Hua to support his self-defense theory, emphasizing that the shot that killed Whitley was fired from several inches away, that the bullet followed a downward trajectory, and that gunpowder residue was found on Whitley's clothing. These facts, the defense evidently concluded, were consistent with defendant's account of a struggle for a gun in Whitley's hand and with the gun accidentally discharging and killing Whitley. Additionally, Dr. Zaretski's autopsy did not indicate that he tested for gunpowder residue on Whitley's hands. The absence of such residue would have strongly suggested, and perhaps proven, that the gun was not in Whitley's hand when it discharged and would have been damning to defendant's case. The defense, arguably, was content to have Dr. Hua on the stand rather than Dr. Zaretski, not wanting to chance that Dr. Zaretski might offer damaging testimony. (pp. 13-14)

4.      Defendant had the burden of raising his Confrontation Clause objection and failed to do so. The defense cannot be faulted for not insisting that the State call a live witness who might have highlighted weaknesses in the defense. The doctrine of invited error does not permit a defendant to pursue a strategy of allowing a substitute witness to testify, and then when the strategy does not work out as planned, cry foul and win a new trial. Here, the trial court could not have perceived that defense counsel was committing an error clearly capable of producing an unjust result by declining to object to the testimony of Dr. Hua. In addition, had defense counsel raised a timely objection, and had the trial court granted it, the State might have called Dr. Zaretski to testify, nullifying the Confrontation Clause issue. Having failed to raise or preserve his confrontation claim, defendant has waived it and the Court declines to reach the merits of defendant's Confrontation Clause arguments. (pp. 14-15)

5.      Confrontation Clause objections to the expected testimony of a State's expert witness on the ground that he or she did not conduct, supervise, or participate in a scientific or other such test are best addressed before trial to avoid surprise or unfairness. Accordingly, at a reasonable time before trial, but no later than the pretrial conference, absent extenuating circumstances, the State should notify the defendant of its intention to call an expert witness who did not conduct, supervise, or participate in a scientific or other such test about which he or she will testify. After the State gives notice, the defense should be required, within ten days, or longer if necessary, to notify the State that it objects to the expected testimony of the expert witness on Confrontation Clause grounds. The Court refers to the Supreme Court Committee on Criminal Practice the crafting of a rule, with any needed improvements, on pretrial notice and demand. (pp. 15-16)

The judgment of the Appellate Division is **AFFIRMED** and the matter is **REMANDED** to the trial court for a technical correction to the judgment of conviction.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN'S opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

BRYDEN ROBERT WILLIAMS, A/K/A
LANCE RIDDICK,

    Defendant-Appellant.

        Argued March 4, 2014 – Decided August 6, 2014

        On certification to the Superior Court,
        Appellate Division.

        Robert L. Sloan, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney).

        Frank Muroski, Deputy Attorney General,
        argued the cause for respondent (John J.
        Hoffman, Acting Attorney General of New
        Jersey, attorney).

        Bryden Robert Williams submitted a brief pro
        se.

    JUSTICE ALBIN delivered the opinion of the Court.

    The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution confer on a defendant the right to confront the witnesses against him. That right gives a defendant the opportunity to bar testimony in violation of the Confrontation Clause and the opportunity to

cross-examine a witness.  A defendant, however, is not obliged to exercise his confrontation right if doing so will harm his cause.  As part of a reasonable defense strategy, he may waive his right of confrontation and choose not to object to testimony or choose not to cross-examine a witness.  Therefore, generally, a defendant must attempt to exercise his confrontation right and object when necessary, if he wishes later to claim that he was denied that right.

In this appeal from a murder conviction, defendant claims that his confrontation right was violated when a medical examiner, who did not conduct the victim's autopsy, testified about both his own and the absent medical examiner's findings.  At trial, defendant raised no objection to the testimony of the medical examiner presented by the State.  Indeed, he cross-examined the medical examiner, eliciting information seemingly consistent with his defense.  On appeal, for the first time, defendant raised a Confrontation Clause claim, asserting that the medical examiner's testimony was constitutionally barred because his testimony did not give a first-hand account of how the autopsy was performed and merely passed through the findings of the absent medical examiner.

Although the Appellate Division reached the merits of that issue in affirming defendant's conviction, we decline to do so.  In the circumstances here, defendant's failure to object on

2

confrontation grounds and his decision to cross-examine the medical examiner constitute a waiver of his confrontation right. Given his knowledge of the strengths and weaknesses of his case, defendant was in the best position to decide whether objecting or playing through best advanced his strategic trial interests. We will not second-guess that decision on the present record.

Accordingly, we affirm the judgment of the Appellate Division upholding defendant's conviction.

I.

A.

A jury convicted defendant, Bryden Robert Williams, of murder, N.J.S.A. 2C:11-3(a)(1) and (2); third-degree possession of a handgun without a carrying permit, N.J.S.A. 2C:39-5(b);[1] and second-degree possession of a handgun with the purpose to use it unlawfully against another, N.J.S.A. 2C:39-4(a). The trial court sentenced defendant to a fifty-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the murder conviction and to a concurrent four-year term on the conviction for possession of a handgun without a permit. The

---

[1] The indictment and judgment of conviction both mistakenly cite this charge as a violation of N.J.S.A. 2C:39-5(d). At the time of the offense, possession of a handgun without a carrying permit was a third-degree offense; it is currently a second-degree offense. See L. 1997, c. 375, § 2.

remaining conviction was merged.  The court imposed the appropriate fines and penalties.

B.

We begin with the evidence relevant to this appeal.  In the early morning hours of September 3, 2006, police officers found the body of Joel Whitley in an alley next to 517 East Sixth Street in the City of Plainfield.  Whitley had died of a gunshot wound to the chest.

The State presented evidence that earlier that evening Whitley, his cousin Omar Boyd, and Boyd's girlfriend attended a party in the second-floor apartment of Dynesha Gibson at 517 East Sixth Street.  At the party, Whitley became intoxicated and involved in an altercation with another guest.  Whitley was asked to leave and departed with Boyd and the girlfriend.  A short time afterwards, Whitley realized that he had left his cell phone at the apartment and returned to retrieve it with Boyd.

On their arrival, Boyd called out to the second-floor apartment and asked for the return of the phone.  From the apartment window, Gibson verbally refused.  Whitley exited the car where he had been sitting and demanded the phone.  Gibson then threw water on Whitley, enraging Whitley, who began kicking the apartment's front door.  Gibson told Whitley and Boyd that

4

they better leave before defendant -- to whom she referred as "Bolo" -- appeared.

Just as Whitley and Boyd were about to leave, defendant arrived in a pickup truck. Defendant exited, armed with a handgun, and asked the two, "What's the problem?" At first, defendant pointed the gun at Boyd. But after Gibson yelled from the window that Whitley had "disrespected" either her or her sister, defendant put the gun to Whitley's head and forced him into an adjacent alley. There, Whitley told defendant to "[g]et that gun out [of] my face," and pushed the gun away from his head. Defendant then pointed the gun at Whitley's chest and fired once, killing him. Boyd, who witnessed the shooting, ran from the scene. He testified that neither he nor Whitley was armed with a gun.

Defendant testified that he acted in self-defense, offering an entirely different account from the one presented by the State through Boyd. Defendant asserted that when he arrived at Gibson's apartment, he saw Whitley banging on the apartment's door and "making a lot of noise." Defendant told them to "get off the porch." As Whitley and Boyd did so, Whitley pulled a gun and pointed it at defendant. With the gun aimed at his face, defendant backed up with his hands in the air. Boyd told Whitley to stop, and the two argued. Meanwhile, Whitley continued to approach defendant, who pushed the gun away from

5

his face.  A struggle ensued.  As they wrestled for the gun, which was in Whitley's hand but turned at an angle, a single shot was fired.  Whitley fell to the ground with the gun still in his hand.  Defendant stated that he "never touched the handle of the gun" during the deadly encounter, and simply was attempting to disarm Whitley when the gun went off.

The police never recovered the gun responsible for Whitley's death.

C.

A critical phase of the trial was the testimony of Dr. Zhongxue Hua, the Chief Medical Examiner of Union County.  The State called Dr. Hua, a forensic pathology expert, to testify about the cause and manner of Whitley's death.  Dr. Hua did not perform or assist in the autopsy.  The autopsy was conducted by Dr. Leonard Zaretski, Union County's Chief Medical Examiner at the time of Whitley's death.  Dr. Zaretski prepared an autopsy report, but he was not called as a trial witness.  Defendant did not object to Dr. Hua giving testimony or to his qualifications.

Based on his review of Dr. Zaretski's autopsy report, autopsy and crime scene photographs, the victim's clothing, and a State Police laboratory report, Dr. Hua stated that he was able to reach independent conclusions about both the manner and cause of Whitley's death.  Referring to the autopsy report, Dr. Hua stated that the manner of death was homicide.  He explained

6

that the cause of death was a bullet that entered the left side of the victim's chest and moved downwards, inflicting damage to the heart and a major artery.  The injury produced a dramatic blood loss and an accumulation of blood around the heart. Whitley died within a matter of seconds.  Dr. Hua stated that neither defensive wounds nor gunpowder burns or residue were found on the victim's body.

On cross-examination, defense counsel pursued questioning consistent with a theory of self-defense.  Based on gunpowder residue discovered on Whitley's clothing, defense counsel elicited from Dr. Hua that the gun was fired "several inches" away from Whitley.  Defense counsel also had Dr. Hua explain that the bullet took a downward path through Whitley's body. That fact, however, did not resolve whether Whitley was standing straight, crouched, or in some other position at the time of the shooting.  Finally, in response to defense questioning, Dr. Hua stated that if Whitley had been holding the gun's handle when it discharged, gunpowder residue would have been found on his hand. But Dr. Zaretski's report did not indicate whether he tested Whitley's hand for gunpowder residue.

During his summation, defense counsel characterized Dr. Hua's testimony as supportive of a self-defense theory.  He argued that "Dr. Hua's testimony about the path of the bullet is consistent with" defendant's testimony that he and Whitley

7

struggled for the gun and that it discharged while in Whitley's hand.

Ultimately, the jury rejected self-defense as a justification for the shooting and found defendant guilty of all charges. Defendant appealed.

## II.

The Appellate Division rejected all of defendant's claims in an unpublished opinion. For our purposes, the only relevant issue raised before the appellate panel is defendant's contention that Dr. Hua's testimony violated his right of confrontation. Despite noting that defendant did not object at trial to Dr. Hua's testimony, the panel nevertheless addressed the merits of the argument. The panel reasoned that Dr. Hua's testimony did not run afoul of the Confrontation Clause because Dr. Hua testified about his own independent findings "based, not only upon Zaretski's report, but also upon the photographs of the autopsy and his personal examination of Whitley's clothing." The panel emphasized that the autopsy report was not admitted into evidence. Last, the panel considered that "defense counsel extensively cross-examined Hua" and attempted to use to his advantage the autopsy findings from Dr. Zaretski's report.

We granted defendant's petition for certification "limited to the issue of whether the admission of the testimony by the

8

pathologist who did not perform the autopsy violated defendant's right of confrontation."  212 N.J. 103 (2012).

## III.

Defendant argues that the admission of the autopsy findings of the non-testifying medical examiner, Dr. Zaretski, through the testimony of Dr. Hua violated his right to confront the witnesses against him guaranteed by the Federal and State Constitutions, citing Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 1365, 158 L. Ed. 2d 177, 194 (2004), and Bullcoming v. New Mexico, 564 U.S. ___, ___, 131 S. Ct. 2705, 2713, 180 L. Ed. 2d 610, 619 (2011).

The State argues that defendant waived his confrontation right when he failed to object to the testimony of Dr. Hua and instead cross-examined him, "elicit[ing] some of the testimony of which he now complains."  The State, moreover, contends that "autopsy reports in New Jersey are nontestimonial statements that are not covered by the Confrontation Clause and thus [may be] properly relied on by testifying experts in forensic pathology in forming an opinion" concerning the cause and manner of death.

## IV.

9

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that, in a criminal trial, the accused has the right "to be confronted with the witnesses against him."  The Confrontation Clause "prohibit[s] the use of out-of-court testimonial hearsay, untested by cross-examination, as a substitute for in-court testimony."  State ex rel. J.A., 195 N.J. 324, 342 (2008) (discussing Crawford, supra, 541 U.S. at 51-61, 124 S. Ct. at 1364-70, 158 L. Ed. 2d at 192-99).  The Confrontation Clause guarantees the accused the right to confront "those who bear testimony" against him.  Crawford, supra, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192 (internal quotation marks omitted).  The Clause therefore "expresses a preference for the in-court testimony of a witness, whose veracity can be tested by the rigors of cross-examination."  J.A., supra, 195 N.J. at 342.

The right of confrontation, like other constitutional rights, may be waived by the accused.  The Constitution does not compel a criminal defendant to insist that the State call a live witness who might do damage to his case.  See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 328, 129 S. Ct. 2527, 2542, 174 L. Ed. 2d 314, 332 (2009) ("It is unlikely that defense counsel will insist on live testimony whose effect will be merely to highlight rather than cast doubt upon the forensic analysis.").  Defense counsel, many times as a matter of trial strategy, will

10

refrain from objecting to hearsay that may inure to the advantage of the defendant.  Because counsel and the defendant know their case and their defenses, they are in the best position to make the tactical decision whether to raise a Confrontation Clause objection.  See United States v. Moon, 512 F.3d 359, 361 (7th Cir.) ("That it may be to defendants' advantage to accept the hearsay version of evidence makes it problematic to entertain a Crawford claim via the plain-error [standard] . . . ."), cert. denied, 555 U.S. 812, 129 S. Ct. 39-40, 172 L. Ed. 2d 19 (2008); State v. Nyhammer, 197 N.J. 383, 413-14 (finding no Confrontation Clause violation where defendant chose "strategic course" not to cross-examine victim about accusations in videotaped interview), cert. denied, 558 U.S. 831, 130 S. Ct. 65, 175 L. Ed. 2d 48 (2009).

It therefore makes perfect sense that "[t]he defendant always has the burden of raising his Confrontation Clause objection."  Melendez-Diaz, supra, 557 U.S. at 327, 129 S. Ct. at 2541, 174 L. Ed. 2d at 331; see also United States v. Maxwell, 724 F.3d 724, 728 (7th Cir. 2013) ("[T]he strategic decision to demand live testimony is the defendant's choice to make, and one that many defendants . . . opt to forego -- sometimes for good reasons.").  It is the defendant's choice "to assert (or forfeit by silence) his Confrontation Clause right."

Melendez-Diaz, supra, 557 U.S. at 326, 129 S. Ct. at 2541, 174 L. Ed. 2d at 331.

Yet, there may be some instances where the failure to object is so patently unreasonable and so clearly erroneous that no rational counsel acting within the wide range of professional norms would pursue such a course. In those instances, a trial court may take notice of "any error of such a nature as to have been clearly capable of producing an unjust result, even though such error was not brought to its attention by a party." R. 1:7-5; see also Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984) (requiring "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" for ineffective assistance claim); State v. Fritz, 105 N.J. 42, 60-61 (1987) (adopting Strickland standard).

Additionally, when a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy -- a strategy not unreasonable on its face but one that did not result in a favorable outcome -- his claim may be barred by the invited-error doctrine. See State v. A.R., 213 N.J. 542, 561-62 (2013); N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 340 (2010). The invited-error doctrine is intended to "prevent defendants from manipulating the system" and will apply "when a defendant in some way has led the court into error"

12

while pursuing a tactical advantage that does not work as planned.  A.R., supra, 213 N.J. at 561-62 (citations and internal quotation marks omitted).  The doctrine "is grounded in considerations of fairness," but will not apply automatically if to do so would "cause a fundamental miscarriage of justice." Ibid. (citations, internal quotation marks, and alterations omitted).

We now apply these principles of law to the facts before us.

V.

Defense counsel made the decision to refrain from objecting to the testimony of Dr. Hua.  When the State offered Dr. Hua as an expert in the field of forensic pathology, defense counsel responded:  "No questions on qualifications, your Honor.  I don't object to the doctor testifying in that way."  Defendant proceeded to extract as much favorable testimony from Dr. Hua as might support his self-defense theory.  Through Dr. Hua's testimony, defense counsel emphasized that the shot that killed Whitley was fired from several inches away, that the bullet followed a downward trajectory, and that gunpowder residue was found on Whitley's clothing.  These facts, the defense evidently concluded, were consistent with defendant's account of a

13

struggle for a gun in Whitley's hand and with the gun accidentally discharging and killing Whitley.

Moreover, the autopsy report of Dr. Zaretski did not indicate that he tested for gunpowder residue on Whitley's hands.  The absence of such residue would have strongly suggested, and perhaps proven, that the gun was not in Whitley's hand when it discharged and would have been damning to defendant's case.  The defense, arguably, was content to have Dr. Hua on the stand rather than Dr. Zaretski, not wanting to chance that Dr. Zaretski might offer damaging testimony.  That is, the defense may have calculated that it was better to draw favorable inferences from the cold, written report of Dr. Zaretski than possibly have unfavorable testimony from a live witness.

Defendant had "the burden of raising his Confrontation Clause objection," Melendez-Diaz, supra, 557 U.S. at 327, 129 S. Ct. at 2541, 174 L. Ed. 2d at 331, and he failed to do so.  We cannot fault defense counsel for not insisting that the State call a live witness who might have highlighted weaknesses in the defense.  See id. at 328, 129 S. Ct. at 2542, 174 L. Ed. 2d at 332.  The doctrine of invited error does not permit a defendant to pursue a strategy of allowing a substitute witness to testify -- hopefully to his advantage -- and then when the strategy does not work out as planned, cry foul and win a new trial.  See

14

A.R., supra, 213 N.J. at 561 ("[T]rial errors that were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal . . . ." (internal quotation marks omitted)).

On this record, the trial court could not have perceived that defense counsel was committing an error "clearly capable of producing an unjust result" by declining to object to the testimony of Dr. Hua. See R. 1:7-5. In addition, had defense counsel raised a timely objection and had it been granted, the State might have called Dr. Zaretski to testify, nullifying the Confrontation Clause issue.

In short, defendant failed to raise or preserve his confrontation claim. That claim is therefore waived. For that reason, we decline to address the merits of defendant's Confrontation Clause arguments.


VI.

Confrontation Clause objections to the expected testimony of a State's expert witness on the ground that he or she did not conduct, supervise, or participate in a scientific or other such test are best addressed before trial to avoid surprise or unfairness. Accordingly, at a reasonable time before trial, but no later than the pretrial conference, absent extenuating circumstances, the State should notify the defendant of its

15

intention to call an expert witness who did not conduct, supervise, or participate in a scientific or other such test about which he or she will testify.  After the State gives notice, the defense should be required, within ten days, or longer if necessary, to notify the State that it objects to the expected testimony of the expert witness on Confrontation Clause grounds.  See Melendez-Diaz, supra, 557 U.S. at 326-27, 129 S. Ct. at 2541, 174 L. Ed. 2d at 330-31 (discussing notice and demand laws).  We refer to the Supreme Court Committee on Criminal Practice the crafting of a rule, with any needed improvements, on pretrial notice and demand.[2]


## VII.

In summary, defendant waived his Confrontation Clause claim by failing to raise an objection to the testimony of the substitute medical examiner.  We therefore affirm the judgment of the Appellate Division upholding defendant's murder and gun-possession convictions.[3]

---

[2] Notably, N.J.S.A. 2C:35-19(c) provides for notice and demand in cases involving the use of controlled-dangerous-substance reports and certificates issued by State Forensic Laboratories. See State v. Simbara, 175 N.J. 37, 48-49 (2002) (construing notice-and-demand procedure of N.J.S.A. 2C:35-19 to allow defendant to assert or waive right to confront certificate's preparer).

[3] Because the judgment of conviction contains a typographical error in the grading of the two gun convictions, this matter

16

CHIEF JUSTICE RABNER, JUSTICES LaVECCHIA, PATTERSON, and FERNANDEZ-VINA, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE ALBIN's opinion.

---

must be remanded to the trial court for this technical correction.

17

SUPREME COURT OF NEW JERSEY

NO. __A-5___  SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

        v.

BRYDEN ROBERT WILLIAMS,
a/k/a LANCE RIDDICK,

     Defendant-Appellant.

DECIDED      August 6, 2014
     Chief Justice Rabner     PRESIDING

OPINION BY      Justice Albin

CONCURRING/DISSENTING OPINIONS BY

DISSENTING OPINION BY

| CHECKLIST | AFFIRM AND REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1