**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2321-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

EDUARDO LAGO, a/k/a CHULEY EDDIE,
EDGARDO LAGO, EDUARDO L. LAGO,
and EDUARDO LAGOS,

    Defendant-Appellant.

_____

Submitted March 14, 2017 — Decided August 1, 2017

Before Judges Fisher, Leone and Vernoia.

On appeal from the Superior Court of New
Jersey, Law Division, Union County, Indictment
No. 11-04-0450.

Joseph E. Krakora, Public Defender, attorney
for appellant (Stephen W. Kirsch, Assistant
Deputy Public Defender, of counsel and on the
brief).

Christopher S. Porrino, Attorney General,
attorney for respondent (Sarah E. Ross and
Frank Muroski, Deputy Attorney Generals, of
counsel and on the brief).

PER CURIAM

Defendant appeals his convictions following a jury trial for murder and weapons offenses. He argues the court erred by permitting testimony in violation of his right to confrontation and by providing an incorrect response to a question posed by the jury during its deliberations. Based on our review of the record in light of the applicable law, we affirm.

<u>I.</u>

The charges against defendant arise from the murder of Yessina Feliciano at the Elizabeth home of her sister, Gloria Francisco, and brother-in-law, Jesus Francisco.[1] In the early morning hours of November 14, 2010, the doorbell rang and Feliciano and Gloria opened a side door to the home, where they were confronted by three men. Gloria knew defendant and immediately recognized him as one of the men, but was not familiar with the others. She saw defendant lift his arms with something in his hands, and heard a single gunshot. Feliciano suffered a gunshot wound and died at the scene. The three men fled.

Defendant was arrested and charged in an indictment with first-degree knowing or purposeful murder of Feliciano, <u>N.J.S.A.</u> 2C:11-3(a) or (b) (count one); second-degree unlawful possession of a weapon, <u>N.J.S.A.</u> 2C:39-5(b) (count two); and second-degree

---

[1] We will refer to Gloria and Jesus Francisco by their first names to avoid any confusion and for ease of reference.

possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count three). The evidence during his jury trial showed the following.

On November 14, 2010, Gloria and Feliciano awoke to the sound of the doorbell and went to side door of the home. The area outside the door was well-lit and when Feliciano opened the door, Gloria saw defendant and two other men. Gloria knew defendant "extremely well" because he was a former friend of her son Steven Rios, had been at their home hundreds of times, and had lived at the home for a few months. When Gloria saw defendant standing at the door, his hands were down between his legs and he was holding something. The other two men stood with their hands at their sides.

Gloria testified that she observed "something in between [defendant's] hands which was a gun," but later clarified that she could not identify the object he held. However, Gloria saw defendant raise his arms while grasping the object, and point his arms in the direction of her and Feliciano. She heard a gunshot, pulled Feliciano away, and closed the door. Gloria saw Feliciano bleeding from the chest and mouth.

Jesus testified he awoke to screaming and went downstairs where he observed Feliciano bleeding from the chest. He asked Gloria who shot Feliciano and she said it was defendant. Jesus

called the police and, after they arrived, provided them with photographs of defendant and Rios together.

Rios testified about his prior friendship with defendant and a dispute that had arisen between them over gang membership. Rios and defendant had been close friends and in 2010 joined the "Crips" gang. Defendant later moved to Newark and joined the "Bloods" gang. Rios's gang "boss" learned that defendant joined the Bloods and "gave [Rios] a green light" to beat up defendant. Rios testified that if he did not follow the order, he would be beaten by his own gang's members. Rios said he never saw defendant again, and that his only further contact with defendant was an argument over the phone at an unspecified time after defendant moved to Newark.

The police searched for defendant following Gloria's identification of him as the shooter. Detective William Lord went to an apartment on Railroad Avenue in Newark to search for defendant. The apartment was identified as a place defendant and a friend had lived. The residents of the apartment were Donte Kirce, his girlfriend Laisha Maldanado, her brother Kidanys Maldanado,[2] and other members of the Maldanado family.

---

[2] We will refer to Laisha and Kidanys Francisco by their first names to avoid any confusion and for ease of reference.

During the daytime hours of November 14, 2010, Lord went to the Railroad Avenue apartment twice in search of defendant. Lord spoke with Laisha and was permitted to look through the apartment for defendant, but defendant was not there.

Later that evening, Kirce arrived home at the Railroad Avenue apartment and found the door barricaded with furniture. Kidanys let Kirce into the apartment and Kirce saw defendant. About forty-five minutes later, Kirce left the apartment and went to see Laisha where she worked. Kirce testified that Laisha "explained the situation" that a "lady died in Elizabeth." The court sustained defense counsel's hearsay objection to the testimony and struck the testimony. In response to the prosecutor's next questions, Kirce said he called "Crimestoppers"[3] based on information he learned from Laisha. Kirce did not testify about what he told Crimestoppers when he called.

Kirce returned to the Railroad Avenue apartment and "sat in the living room with Kidanys and defendant." Kirce heard defendant say "[s]omebody had to go," but defendant did not indicate what he meant or who he was talking about.

---

[3] "Crimestoppers" was described by Lord as a hotline "where people can make anonymous tips to the police regarding criminal activity."

The State introduced portions of Kirce's statement[4] to the police where he explained that while he was in the apartment, Kidanys retrieved a gun with a missing bullet from a back room and handed it through the apartment door to an unidentified individual. In his statement, Kirce explained that defendant said "they" shot his "baby['s] mother['s] salon," that he went "looking for the dudes" and when he could not find them, he shot "one of the dude's aunt[s]." Kirce also told the police defendant was "scared" because defendant believed "the cops [were] coming."

In response to the information Kirce provided to Crimestoppers, later that evening Lord and Sergeant Jorge Jiminez went to the Railroad Avenue apartment and arrested defendant. They also took Kidanys, Kirce, and two other men to the police station to obtain their statements. The investigation led police to the men that accompanied defendant to the scene of the shooting.

Noel Gonzalez was present when Feliciano was shot. He testified that he left a party in Newark with defendant and a man named Chutay in a car driven by Nelson Pena. Gonzalez was intoxicated but remembered standing by a house and seeing defendant at a different house about twenty feet away. Gonzalez saw defendant

---

[4] The court permitted the introduction of portions of Kirce's statement to the police following a hearing conducted in accordance with State v. Gross, 121 N.J. 1 (1990). Defendant does not challenge the court's ruling on appeal.

A-2321-14T4

"pull up [what] would appear to look like a gun" and shoot a woman at her doorway. On cross-examination, he acknowledged he "didn't see [defendant] actually pull the trigger," but did see defendant raise his hand right before the gunshot went off. According to Gonzalez, when defendant raised his hand, there was no one else near defendant other than the woman in front of him.

Nelson Pena testified that at about 4:00 a.m., he left a party in a car with defendant, Gonzalez, Chutay and "Slash." Defendant gave Pena directions to a street in Elizabeth, where Pena stopped the car in accordance with defendant's instructions. Pena, Gonzalez and defendant exited the car. Pena watched defendant and Gonzalez approach the side of a house, heard a shot and a scream, and the three men ran back to the car and departed. Pena testified that he did not see defendant with a gun and there was no discussion in the car concerning a shooting after they departed the scene.

Kidanys also testified. He was at the Newark party but did not leave in the car with defendant and the others. He testified that defendant left in a car driven by "Nelson" and there were three other occupants. Kidanys explained that when the individuals later returned to the party, defendant said they had gone to Elizabeth and that "They did something . . . Somebody got killed." Defendant told Kidanys "he shot the person in the head." Defendant

said the shooting was over "family problems or something like that," and showed Kidanys a .22 caliber revolver and a bullet casing. Defendant also told Kidanys a guy was "bothering [defendant's] baby mom," and that he rang the doorbell of the home where the shooting took place and shot the woman that opened the door.

Feliciano's autopsy was performed by a State medical examiner, Dr. Wall,[5] on the day of the shooting. At the time of trial, Wall was not available to testify. The State called another medical examiner, Dr. Junaid Shaikh, to testify concerning the cause of Feliciano's death. Shaikh was qualified as an expert in forensic pathology.

Shaikh testified he reviewed Wall's autopsy report and made independent findings based on his review of photographs of the autopsy, the toxicology report, and the record of Wall's investigation. Shaikh determined the cause of death was a "gunshot wound [to her] chest," and the manner of death was "homicide."

Defense counsel objected to Shaikh's testimony, arguing it was hearsay because it was based on Wall's autopsy report. The court overruled the objection, finding "the hearsay rules permit

---

[5] The record does not indicate Wall's full name.

an expert [] to rely upon other expert[s'] reports . . . in reaching his or her conclusions."

Defendant exercised his right not to testify and did not present any witnesses. He was convicted on all counts. At sentencing, the court merged count three into count one and imposed a forty-year sentence subject to the requirements of the No Early Release Act, N.J.S.A. 2C:43-7.2, and a concurrent seven-year sentence with a three-year period of parole ineligibility on count two. Defendant appealed.

On appeal, defendant makes the following arguments:

POINT I

IN VIOLATION OF THE CONFRONTATION AND HEARSAY DOCTRINES OF STATE V. BRANCH AND STATE V. DEHART, THE TRIAL JUDGE IMPROPERLY ALLOWED THE STATE TO PUT BEFORE THE JURY EVIDENCE THAT DONTE KIRCE CONTACTED POLICE IN ORDER TO HAVE DEFENDANT ARRESTED ONLY IN RESPONSE TO BEING TOLD A HEARSAY ACCOUNT OF DEFENDANT'S ALLEGED COMMISSION OF THE CRIME. (PARTIALLY RAISED BELOW).

POINT II

THE JUDGE'S RESPONSE TO THE JURY'S QUESTION ABOUT THE DEFENDANT'S POTENTIAL CRIMINAL RESPONSIBILITY IF HE WERE NOT THE SHOOTER WAS CLEARLY ERRONEOUS AND DEPRIVED DEFENDANT OF A POSSIBLE VERDICT FOR A LESSER-INCLUDED OFFENSE. (NOT RAISED BELOW).

POINT III

THE MEDICAL EXAMINER, WHO DID NOT CONDUCT THE AUTOPSY OF THE DECEDENT, WAS IMPROPERLY

ALLOWED, OVER OBJECTION OF DEFENSE COUNSEL, TO READ PORTIONS OF THE AUTOPSY REPORT THAT WAS PREPARED BY THE MEDICAL EXAMINER WHO ACTUALLY PERFORMED THE AUTOPSY, THEREBY VIOLATING DEFENDANT'S CONFRONTATION RIGHTS UNDER STATE V. BASS.

## II.

"The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution confer on . . . defendant[s] the right to confront the witnesses against [them]." State v. Williams, 219 N.J. 89, 92 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015). Defendant argues his right to confrontation was violated when Kirce testified that he called the police based on information provided by Laisha. Defendant contends the testimony permitted the jury to infer that Laisha had knowledge implicating defendant in Feliciano's murder, and that its admission requires reversal of his convictions.

Before the challenged testimony, defendant had objected to Kirce's testimony that Laisha told him "about the situation" and that "a lady died in Elizabeth." The State argued the testimony was admissible to explain why Kirce subsequently called the police about defendant. The court sustained the objection on hearsay grounds and immediately advised the jury that the testimony was stricken.

Kirce then answered the following two questions posed by the prosecutor.

> [PROSECUTOR:] Without giving any testimony to what conversations you [and Laisha] had, did you learn information from Laisha?
>
> [KIRCE:] Yes.
>
> [PROSECUTOR:] Based upon that information, what did you do?
>
> [KIRCE:] I called Crimestoppers.

Defendant did not object to the questions, but now contends Kirce's responses violated his right to confrontation as interpreted by our Supreme Court in State v. Branch, 182 N.J. 338 (2005).

In State v. Bankston, 63 N.J. 263, 265-68 (1973), the Court addressed an accused's right to confront witnesses in the context of a police officer's testimony concerning why certain actions were taken during an investigation. During trial, a detective testified that "before defendant was arrested the officers had been talking to an informer and that based on information received they went to [a] tavern," with a description of defendant's clothing, and found defendant in possession of narcotics. Id. at 266-67.

The Court explained the hearsay rule does not prevent an officer from testifying that he took an action based "upon information received," but that "when the officer becomes more

specific by repeating what some other person told him concerning a crime by the accused the testimony violates the hearsay rule . . . [and] the accused's Sixth Amendment right to be confronted by witnesses against him." Id. at 268-69. The Court reversed the defendant's conviction because the "detective's hearsay testimony led to the 'inescapable inference' that the detective received information from an unknown source implicating the defendant in the crime," Branch, supra, 182 N.J. at 349 (explaining Bankston), and because "the record presented a debatable case for the jury, admission of the testimony "may well have been the decisive factor which resulted in the guilty verdict," Bankston, supra, 63 N.J. at 272-73.

In Branch, supra, 182 N.J. at 346-47, the primary issue concerning defendant's guilt was his identification by two victims during their review of photo arrays. A detective testified the arrays were assembled "based on information received." Id. at 347. The Court found that a police officer may testify that he took an action "based on information received" to explain an action, "but only if necessary to rebut a suggestion that they acted arbitrarily and only if the use of that phrase does not create an inference that the defendant has been implicated in a crime by some unknown person." Id. at 352. "The 'common thread' that renders testimony about information received from non-testifying third parties

inadmissible 'is that a police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant.'" State v. Weaver, 219 N.J. 131, 152 (2014) (quoting Branch, supra, 182 N.J. at 351); see also State v. Lazo, 209 N.J. 9, 12—13 (2012) ("an officer's reasons for placing a particular photo in an array are irrelevant and prejudicial," and can "improperly bolster[] the victim's account and invade[] the role of the jury to weigh the victim's credibility").

Defendant argues Kirce's testimony that he called Crimestoppers based on information from Laisha violated his right to confrontation in the same manner as the testimony of the officers in Bankston and Branch. Even if we assume this testimony violated defendant's right to confrontation, he cannot show prejudice. "When evidence is admitted that contravenes not only the hearsay rule but also a constitutional right, an appellate court must determine whether the error impacted the verdict." Weaver, supra, 219 N.J. at 154. Here, defendant did not object to the testimony and we therefore consider whether Kirce's testimony impacted the verdict under the plain error standard. We will not reverse unless the testimony was "clearly capable of producing an unjust result." R. 2:10-2; see Branch, supra, 182 N.J. at 353 (applying the plain error standard where there was no objection

to testimony that violated defendant's right to confrontation). We reverse only where there is a possibility of an unjust result "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. G.V., 162 N.J. 252, 280 (2000) (quoting State v. G.S., 145 N.J. 460, 473 (1996)).

Having carefully reviewed the record, we are convinced Kirce's testimony was not clearly capable of producing an unjust result. R. 2:10-2; see also State v. Kemp, 195 N.J. 136, 156 (2008) (finding that even where testimony may implicate "the concerns interdicted by Bankston," a reversal is not required where the totality of the circumstances leads to the conclusion that admission of the evidence was harmless). Kirce's testimony that he called Crimestoppers based on information he received from Laisha does not logically support a conclusion that Laisha implicated defendant in the commission of a crime or that she had any knowledge concerning his involvement in any crime.

The jury was not presented with any evidence Laisha had any knowledge about defendant's involvement in Feliciano's murder. She was not present at the scene and there is no evidence she spoke to anyone who was present. The evidence showed only that Laisha spoke to Lord when he went to the apartment on two occasions looking for defendant.

Moreover, there is no evidence showing Kirce knew the police were searching for defendant prior to his conversation with Laisha. In his challenged testimony, Kirce said only that based on the information Laisha provided, he called Crimestoppers. The evidence permitted only an inference that Laisha told Kirce the police were searching for defendant, and Kirce, who knew defendant was at the apartment, called Crimestoppers to report defendant's location.[6]

When considered in the context of the evidence, Kirce's testimony about the actions he took based on information Laisha provided relates solely to the search for defendant. Unlike the testimony at issue in <u>Bankston</u> and <u>Branch</u>, Kirce's testimony did not "permit[] the jury to draw the inescapable inference that a non-testifying declarant provided information that implicated" defendant in the commission of a crime, and did not "suggest[] that some other person provided information that linked defendant to the crime." <u>Branch</u>, <u>supra</u>, 182 <u>N.J.</u> at 351. To the contrary,

---

[6] The same result applies even if we accept defendant's contention that the jury could not be reasonably expected to honor the judge's ruling striking Kirce's testimony that he discussed "the situation" with Laisha and she said "a lady died in Elizabeth." This testimony does not implicate defendant in the commission of any crime but even if it did, it was harmless because there is no evidence Laisha had any knowledge about the commission of the murder or of defendant's involvement in the murder. In any event, we presume the jury followed the court's instructions to strike the testimony. <u>State v. Smith</u>, 212 <u>N.J.</u> 365, 409 (2012).

Kirce's testimony suggested only what the jury knew from other witnesses, that the police were searching for defendant. We therefore do not find there is a reasonable doubt that admission of the testimony led the jury to a result it otherwise might not have reached. G.V., supra, 162 N.J. at 280.

Even assuming Kirce's testimony suggested defendant's participation in a crime, there is an additional reason admission of the testimony did not constitute plain error.[7] Unlike in Bankston, supra, 63 N.J. at 272-73, and Branch, supra, 182 N.J. at 353, where the challenged testimony was capable of producing an unjust result because there was little other evidence of guilt, here there is substantial evidence of defendant's guilt beyond Kirce's brief testimony. Gloria had known defendant for a very long time, recognized him at the door, and immediately identified

---

[7] Defendant argues the harmless error standard of review applies because the challenge to Kirce's testimony was partially raised below when defendant objected to Kirce's testimony that he and Laisha discussed the situation and she said "a lady died in Elizabeth." We disagree. The record shows the court sustained the objection to the testimony and struck it. There was no objection to the particular testimony challenged on appeal and, as such, the plain error standard applies. R. 2:10-2; Branch, supra, 182 N.J. at 353. In addition, we observe that because the harmless error standard requires that we determine whether an error was clearly capable of producing an unjust result, our decision here would be unchanged under that standard. See State v. Macon, 57 N.J. 325, 337-38 (1971) ("[T]he same ultimate standard applies whether the error was objected to below or whether the error was first claimed upon appeal").

him as the shooter. Gonzalez and Pena established that defendant directed their travel to Gloria's home and that defendant went to the door, stood in front of a woman, raised his hands, and a gunshot was fired. Kirce testified defendant admitted that he shot "one of the dude's aunt[s] where [the dude] live at." Kidanys testified defendant showed him the gun and admitted to his motive for the shooting, and that he rang a doorbell and shot the woman that opened the door.

In sum, there was substantial evidence defendant murdered Feliciano beyond Kirce's testimony that he called Crimestoppers after speaking to Laisha. Kirce's testimony was therefore not clearly capable of producing an unjust result. R. 2:10-2; Kemp, supra, 195 N.J. at 153-54.

We also reject defendant's claim that Kirce's testimony violated his right to confrontation. Defendant waived the claim by failing to object to the testimony at trial. "The defendant always has the burden of raising his Confrontation Clause objection." Williams, supra, 219 N.J. at 99 (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 327, 129 S. Ct. 2527, 2541, 174 L. Ed. 2d 314, 331 (2009)). "The right of confrontation, like other constitutional rights, may be waived by the accused." Id. at 98. A defendant is not required to assert a constitutional right, and a defense attorney may choose as part of a reasonable

17

defense strategy to refrain from objecting to testimony that may be otherwise inadmissible because it violates a defendant's right to confrontation. Id. at 99.

A failure to object to testimony that violates a defendant's right to confrontation may not result in a waiver where the failure "is so patently unreasonable and so clearly erroneous that no rational counsel acting within the wide range of professional norms would pursue such a course." Ibid. That is not the case here. Kirce's challenged testimony added little to the State's proofs at trial because it suggested only that he learned from Laisha that the police were searching for defendant. The testimony did not prejudice defendant because other witnesses established that defendant had been identified as the shooter and that based on that information, the police were searching for defendant.

"[G]enerally, a defendant must attempt to exercise his confrontation right and object when necessary, if he wishes later to claim that he was denied that right." Id. at 93. By failing to do so here, defendant waived any claim Kirce's testimony violated his right to confrontation.[8] See id. at 102 (finding the defendant

---

[8] Because we conclude that defendant waived his right to challenge Kirce's testimony on Confrontation Clause grounds, it is unnecessary to decide whether his challenge is also barred under the invited error doctrine. Id. at 100; State v. A.R., 213 N.J. 542, 561-62 (2013). We note, however, that "[u]nder the invited

waived his Confrontation Clause claim by failing to object to challenged testimony at trial).

## III.

We next consider defendant's argument that the court erred by permitting Shaikh to testify concerning Wall's autopsy report. Defendant asserts that because Shaikh did not perform the autopsy, his reliance on Wall's report and testimony detailing the report's findings constituted impermissible hearsay evidence and violated his right to confrontation. Defendant interposed a hearsay objection to the testimony at trial.[9] We therefore consider his

_____

error doctrine, 'trial errors that "were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal."'" State v. Munafo, 222 N.J. 480, 487 (2015) (quoting State v. A.R., 213 N.J. 542, 561 (2013)). A defendant cannot agree to a particular instruction, "'and upon adoption by the court, take his chance on the outcome of the trial, and if unfavorable, then condemn the very procedure he sought and urged, claiming it to be error and prejudicial.'" State v. Ramseur, 106 N.J. 123, 281-82 (1987) (citation omitted).

[9] We reject the State's argument defendant waived his right to challenge Shaikh's testimony on Confrontation Clause grounds because defendant did not raise the issue prior to trial and during trial objected only on hearsay grounds. State v. Wilson, 227 N.J. 534, 543-44 (2017); see also State v. Bass, 224 N.J. 285, 311 (2017) (explaining that although confrontation clause objections are "best addressed before trial," they are not waived if raised during a witness's testimony (quoting Williams, supra, 219 N.J. at 102)). Like the defendant in Wilson, defendant not only objected on hearsay grounds at trial, he also "alluded to an inability to cross-examine" Wall, Wilson, supra, 227 N.J. at 543 (quoting State v. Wilson, 442 N.J. Super. 224, 235 n.4 (App. Div. 2015)), by asking, "Don't I have the right to cross-examine the person who performed the autopsy?"

contentions under the harmless error standard, R. 2:10-2, and must reverse if we determine the purportedly erroneous admission was clearly capable of producing an unjust result. State v. Scott, ___ N.J. ___, ___ (2017) (slip op. at 17).

In Bass, supra, 224 N.J. at 291-92, the Court held that under certain circumstances "the State may present the testimony of a qualified expert who has conducted independent observation and analysis regarding an autopsy performed by a medical examiner who is unavailable to testify at trial, without violating the defendant's" right to confrontation. The testifying doctor is permitted to testify "as an independent reviewer of the information generated by the autopsy" based on a review of "autopsy photographs" and other evidence. Id. at 319. The testifying doctor, however, may not simply "parrot" the information in the autopsy report without violating a defendant's confrontation rights. Ibid. "[A] testimonial report that is not admitted into evidence can engender a violation of the Confrontation Clause if that report is 'integral' to the testimony of a substitute witness." Id. at 317 (quoting State v. Roach, 219 N.J. 58, 76-77 (2014), cert. denied, ___ U.S. ___, 135 S. Ct. 2348, 192 L. Ed. 2d 148 (2015)).

Contrary to defendant's assertions, there were portions of Shaikh's testimony that did not violate defendant's confrontation rights. Shaikh explained that he conducted a review of the autopsy

photographs, which showed Feliciano's internal and external injuries, the gunshot wound, the entrance of the bullet at the left side of Feliciano's chest, and the recovery of the bullet within Feliciano's body. Based on his review of the photographs and the autopsy and toxicology reports, he made an independent finding that Feliciano died as the result of a gunshot wound to the chest. This testimony was based on Shaikh's independent review of the evidence and did not violate defendant's right to confrontation. See id. at 319 (explaining that a substitute medical examiner may provide an opinion based upon an independent review of the evidence).

There were, however, portions of Shaikh's testimony where he simply parroted Wall's autopsy report.[10] Shaikh referred to the autopsy report and testified concerning physical findings made by Wall during the autopsy. Those portions of his testimony violated defendant's confrontation rights. Id. at 316-20. We therefore must consider whether the admission of those portions of his testimony require reversal of defendant's convictions.

_____

[10] We reject the State's argument that Shaikh's testimony concerning the autopsy report did not violate defendant's confrontation rights because the report was not testimonial. See id. at 316-17 (finding autopsy report was testimonial under the "primary purpose test" where the autopsy was conducted during an active police investigation of a homicide).

In determining whether admission of Shaikh's testimony parroting Wall's report constituted harmless error, we consider the importance of the testimony in the context of all of the evidence presented at the trial. Id. at 308. The record shows there was other substantial evidence demonstrating Feliciano died from a gunshot wound to her chest. Separate from his parroting of Wall's report, Shaikh testified that his own independent evaluation of the evidence supported his conclusion Feliciano died from a single gunshot wound. Other evidence established that Feliciano was shot in the chest and died immediately thereafter. Moreover, the cause of Feliciano's death was not an issue genuinely disputed issue at trial. Instead, defendant argued only that the State failed to establish beyond a reasonable doubt that he fired the gun. Therefore, we are not convinced Shaikh's testimony, to the extent it parroted Wall's report, was clearly capable of producing an unjust result.

IV.

We last address defendant's claim that the court erred in its response to a question posed by the jury during its deliberations. The jury asked: "[c]an the defendant cause the victim's death by instructing and leading everyone to the scene regardless of who pulled the trigger[?]" The court conferred with counsel and the

parties agreed without objection to the following response to the jury's inquiry.

> The answer to your question is no. Since the defendant is charged with causing the death of [] Feliciano himself, he cannot be found guilty of causing [] Feliciano's death by . . . instructing and leading everyone to the scene regardless of who pulled the trigger.
>
> If you are not convinced beyond a reasonable doubt that it was [defendant] who caused the death of [] Feliciano knowingly or purposely, then you must find him not guilty.
>
> However, if you are convinced beyond a reasonable doubt that he did cause her death and all the elements of either murder or aggravated manslaughter have been proven by the State beyond a reasonable doubt, then you must convict the defendant.

Defendant argues for the first time on appeal that the court erred in not instructing the jury on principal and accomplice liability, thereby depriving defendant of an opportunity for a verdict on the lesser-included offense of aggravated manslaughter or a potential acquittal.

When a defendant fails to object to a jury charge at trial or a response to a jury question during deliberations, we review for plain error, and "disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). Plain error, in the context of a jury charge,

is "[l]egal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Camacho, 218 N.J. 533, 554 (2014) (alteration in original) (quoting State v. Adams, 194 N.J. 186, 207 (2008)).

Appropriate and proper jury charges, including instructions on lesser-included offenses, are essential to a fair trial. State v. Savage, 172 N.J. 374, 387 (2002); see also State v. Gonzalez, 444 N.J. Super. 62, 70 (App. Div.) (explaining that jury instructions play a critical role in criminal prosecutions), certif. denied, 226 N.J. 209 (2016). However, a defendant's counsel's failure to object to jury instructions not only "gives rise to a presumption that he did not view its absence as prejudicial to his client's case," State v. McGraw, 129 N.J. 68, 80 (1992), but is also "considered a waiver to object to the instruction[s] on appeal." State v. Maloney, 216 N.J. 91, 104 (2013).

"When a defendant may be found guilty either as a principal actor or as an accomplice, the jury should be instructed about both possibilities." State v. Roach, 146 N.J. 208, 223 (1997). The judge may charge the jury on accomplice liability even if the

indictment did not expressly allege accomplice liability as long as there is a rational basis in the evidence for accomplice liability. State v. Hakim, 205 N.J. Super. 385, 388 (App. Div. 1985). The rational basis standard is a low threshold, requiring "more than a mere 'scintilla of evidence.'" State v. Harvey, 151 N.J. 117, 149 (1997) (quoting State v. Mejia, 141 N.J. 475, 489 (1995)), cert. denied, 528 U.S. 1085, 120 S. Ct. 811, 145 L. Ed. 2d 683 (2000).

"[T]he obligation to provide the jury with instructions regarding accomplice liability arises only in situations where the evidence will support a conviction based on the theory that a defendant acted as an accomplice." State v. Crumb, 307 N.J. Super. 204, 221-22 (App. Div. 1997), certif. denied, 153 N.J. 215 (1998). "When the State's theory of the case only accuses the defendant of being a principal, and a defendant argues that he was not involved in the crime at all, then the judge is not obligated to instruct on accomplice liability." Maloney, supra, 216 N.J. at 106.

Applying these principals, we find no error, let alone plain error, in the court's response to the jury question. Defense counsel never requested a jury charge on accomplice liability and agreed to the judge's response to the question. Moreover, there was not a scintilla of evidence supporting a charge of accomplice

liability. <u>Harvey</u>, <u>supra</u>, 151 <u>N.J.</u> at 149. The State's theory of the case was that defendant shot Feliciano based on gang-related retaliation against Rios and Rios's family. There was no evidence that anyone other than defendant was the shooter.

Defendant did not testify or present any witness testimony. In summation, defense counsel argued that the State put on an incomplete case where no witness saw the gun allegedly used in the shooting and the gun was not recovered. Counsel also argued each witness had a different story and that defendant had no motive to kill Feliciano based on gang-related issues with Rios. In other words, defendant's theory was that he did not commit the crime at all. The court therefore was not obligated to sua sponte instruct the jury on accomplice liability in response to the jury question. <u>Maloney</u>, <u>supra</u>, 216 <u>N.J.</u> at 106.

Defendant is also incorrect that the court's response to the jury question deprived him of the possibility of being convicted of the lesser-included offense of aggravated manslaughter. The court charged the jury on the lesser-included offense of aggravated manslaughter, and reminded the jury it could convict defendant of either murder or aggravated manslaughter, or acquit defendant, in its response to the jury's question. The judge ensured there was no risk that the jury convicted defendant simply because it was called upon to reach an "all-or-nothing" determination on the

murder charge. <u>See</u> <u>State v. Short</u>, 131 <u>N.J.</u> 47, 54 (1993) (explaining where jurors are not instructed on a lesser-included offense, they "may be tempted to find defendant guilty of a crime he or she did not commit simply because it prefers to convict on <u>some</u> crime rather than no crime at all").

We have considered defendant's remaining arguments and find they are without merit sufficient to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION