```
┌─────────────────────────────────────────────────────────────┐
│              NOT FOR PUBLICATION WITHOUT THE                  │
│            APPROVAL OF THE APPELLATE DIVISION                 │
│ This opinion shall not "constitute precedent or be binding upon any court." │
│  Although it is posted on the internet, this opinion is binding only on the │
│   parties in the case and its use in other cases is limited. R.1:36-3.      │
└─────────────────────────────────────────────────────────────┘
```

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2783-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARK N. BROWNLOW, a/k/a
MARK NATHAN BROWNLOW,

    Defendant-Appellant.

_____

        Submitted March 29, 2017 — Decided August 9, 2017

        Before Judges Fuentes, Simonelli and Carroll.

        On appeal from Superior Court of New Jersey,
        Law Division, Camden County, Indictment No.
        14-01-0003.

        Joseph E. Krakora, Public Defender, attorney
        for appellant (Daniel V. Gautieri, Assistant
        Deputy Public Defender, of counsel and on the
        brief).

        Mary Eva Colalillo, Camden County Prosecutor,
        attorney for respondent (Robin A. Hamett,
        Assistant Prosecutor, of counsel and on the
        brief).

PER CURIAM

Defendant Mark Nathan Brownlow was tried before a jury and convicted of third degree theft, N.J.S.A. 2C:20-3a. The verdict sheet that the jury used described the pieces of jewelry defendant allegedly stole from the victim and included a separate interrogatory requiring the jury to find whether the value of the property taken was in excess of $500. See N.J.S.A. 2C:20-2b(2)(a). The jury acquitted defendant of third degree burglary, N.J.S.A. 2C:18-2a(1), and third degree conspiracy to commit burglary, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:18-2a(1).

The court sentenced defendant to a four-year term of probation, conditioned upon a substance abuse evaluation and treatment if warranted. The court also imposed the mandatory fines and penalties. In this appeal, defendant argues the trial court should have molded the jury's verdict to a disorderly persons offense of theft because the evidence showed the value of the personal property involved was less than $200. N.J.S.A. 2C:20-2b(4)(a). Alternatively, defendant argues he is entitled to a new trial because the court erred by failing to instruct the jury sua sponte on the lesser included offense of fourth degree theft, N.J.S.A. 2C:20-2b(3).

After reviewing the record developed before the trial court, we reject defendant's arguments and affirm. In this appeal, defendant challenges only the evidence establishing the value of

the items he stole and whether the jury should have been given the option of finding him guilty of a lesser crime based on the value of those items. Stated differently, defendant does not deny he stole these items; he only argues they were worth less than what the State claimed they were worth. We will thus limit our recitation of the salient facts accordingly.

On December 18, 2012, a woman we identify here using the initials D.M., made a 9-1-1 call to the Gloucester Township Police Department to report that her "home had been broken into." D.M. is defendant's mother. D.M. testified she discovered the burglary upon returning home from work. As she "cautiously" walked through the house, she discovered that the back door had been "broken in" and "the bedroom drawers were dumped over, and a mess." Gloucester Township Police Officers David Sgrignuoli and Daniel Ritz responded to the 9-1-1 call. They corroborated D.M.'s description of her residence immediately after the burglary.

D.M. described the items that were taken as "some jewelry pieces," "some banks with change in them," a drill she had given her late husband, which he "never even got to use," and an undisclosed number of "gift cards." After reviewing a police report to refresh her recollection, D.M. described the jewelry pieces stolen as "wedding rings, a butterfly bracelet, some gold chains, [and] a couple of watches." The wedding rings included a

"gold enhancer ring" that "went around . . . [her] diamond engagement ring." D.M. submitted a claim for the theft of these items under her homeowner's insurance policy. D.M. received a check in the amount of $1,207.10 from the insurance company as compensation for her loss.

D.M. testified her twenty-nine-year-old son was "allowed to be in [her] home" and she made clear to the jury that she did not believe defendant had anything to do with this incident. The following exchange illustrates her belief:

> Q. Okay. Now, we understand your house was burglarized in December of 2012. Was your house ever burglarized before that when your son was living with you?
>
> A. No.
>
> Q. Has your son been to your home since this happened?
>
> A. Oh, yes.
>
> Q. Has your home ever been burglarized since then?
>
> A. No.
>
> Q. And you still welcome him in your home, that's correct, right?
>
> A. Yes.
>
> Q. Okay. Do you want to be here today, [D.M.]?
>
> A. Not at all. I'd rather be at work and getting paid for my job.

A-2783-14T2

Q. As you sit here today, do you believe that your son is guilty of this crime beyond a reasonable doubt?

A. No, I don't think my son did this.

Q. And you told the Prosecutor's Office you wanted these charges dropped, isn't that true?

A. Yeah, . . . they've really been harassing me at work and everything. . . .

Defendant's ex-girlfriend Cheryl Hendricks and her brother Mark Hendricks testified as witnesses for the State. Cheryl[1] was charged as a codefendant in this case. She pleaded guilty to conspiracy to commit third degree burglary and was sentenced to a four-year term of probation conditioned upon serving 180 days in the SLAP program.[2] Cheryl denied she received anything from the State in return for her testimony against defendant.

Mark learned of the burglary when he spoke with defendant in the intake section of the Burlington County Jail, where they were both detained at the time. Cheryl testified that at the time of the burglary on December 18, 2012, defendant was living with her "[b]ecause his mother kicked him out" of her house in September

---

[1] We will refer to Cheryl Hendricks and her brother Mark Hendricks by their first names in the interest of clarity. No disrespect is intended or implied.

[2] The acronym "SLAP" refers to the Sheriff's Labor Assistance Program, N.J.S.A. 2B:19-5. When asked to explain what this meant, Cheryl responded: "[The] SLAP program is basically community service."

or October of that year. Defendant drove Cheryl to D.M.'s house and she waited in the car while defendant went inside to steal his mother's jewelry. Defendant used his key to enter the house. He broke the back door to divert suspicion from himself.

According to Cheryl, as soon as defendant came out with the jewelry, they "went and drove to the pawn shop." Defendant wanted to convert the jewelry to cash because "[h]e needed the money." The pawnshop made a photocopy of Cheryl's driver's license and photographed the jewelry. Cheryl received $300 for the items, which she immediately turned over to defendant. The receipt from the pawnshop is dated December 18, 2012. Cheryl also testified that defendant took "clothing and his shoes and a car starter."

Against this record, defendant now raises the following arguments.

POINT I

BECAUSE THE STATE FAILED TO PROVE AN ELEMENT OF THIRD-DEGREE THEFT, THAT THE STOLEN PROPERTY WAS VALUED AT OVER $500[], THE COURT SHOULD MOLD THE VERDICT TO ONE FOR A DISORDERLY-PERSONS THEFT.

POINT II

THE COURT ERRED IN FAILING TO SUBMIT AN INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF FOURTH-DEGREE THEFT BECAUSE THE VALUE OF THE STOLEN OBJECTS WAS UNCLEAR. (Partially Raised Below).

6

The principal issue here is a discrete one. The lesser included offense is based on the valuation of the stolen items. D.M. testified she received $1,207.10 from her home insurance carrier as compensation for her losses. Joseph Palandro, the carrier's representative who handled D.M.'s claim, testified she was paid for "her damages and her stolen items." He did not delineate what amount paid for the loss of her personal property and what amount paid for the damage to her real property.

Cheryl testified she received $300 from the pawnshop. This was corroborated by the pawnshop's receipt, which described the items, and a photograph of the items themselves. D.M. described the jewelry as consisting of a diamond engagement ring enhanced by a gold ring, a butterfly bracelet, some gold chains, a couple of watches, and an unused drill. The jury was specifically asked to determine if these items, taken together, had a value of more than $500. During the Rule 1:8-7(b) charge conference, the judge distributed to counsel "a clean version of the final instructions" and asked them if they had "any additions, corrections, or deletions[.]" The attorneys did not suggest any changes.

During closing arguments to the jury, defense counsel addressed the jury directly on the value of the stolen items.

> Then we look at the values of the property, and the State wants you to submit that . . . the value is in excess of $500. Well, we

heard from the victim, and she testified that she couldn't really remember the amounts and the values of the property and that she wasn't really sure what everything was worth, and someone from the insurance company came in and they testified and they said that they eventually sent her out a check for $1,200, but we didn't see any receipts. We didn't see any copies of . . . documentation of how much it was worth. We didn't see any valuations. What the State has to prove to you is the actual value of the property that has been stolen, and I submit to you, ladies and gentlemen, that they haven't proved what the actual value is.

We're in the same position we were when we first started. I told you the State would not be able to prove its case beyond a reasonable doubt, that they would only be able to bring two individuals who lacked any form of credibility, and ladies and gentlemen, I submit to you that how we started is how we're now finishing.

The law in this area is settled. N.J.S.A. 2C:1-8e cautions trial courts not to charge the jury "with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." However, a trial judge has an independent, non-delegable duty "'to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense.'" State v. Funderburg, 225 N.J. 66, 76 (2016) (quoting State v. Jenkins, 178 N.J. 347, 361 (2004)). Thus, even if neither the State nor defendant requests the trial judge to

instruct the jury on a lesser included offense, the court must sua sponte provide such an instruction when appropriate. State v. Maloney, 216 N.J. 91, 107 (2013) (quoting State v. Thomas, 187 N.J. 119, 132 (2006)).

Because defendant did not request that the court instruct the jury on the lesser included offense based on the value of the items, we review the trial judge's decision for plain error. R. 2:10-2. As applied to jury instructions, plain error requires us to determine whether the charge's impropriety "prejudicially affect[ed]" defendant's "substantial rights" and was "sufficiently grievous" to convince us that the error had a "clear capacity to bring about an unjust result." State v. Chapland, 187 N.J. 275, 289 (2006) (citation omitted).

Here, we are satisfied defendant made a strategic decision to leave the jury with no option other than convict or acquit on the question as framed by the court in the verdict sheet. If the jury had been given the option of considering the lesser included offense of fourth degree theft under N.J.S.A. 2C:20-2b(3), in which the amount involved is at least $200 but does not exceed $500, the pawnshop receipt showing defendant received $300 for the items he pawned would have been viewed as nearly indisputable evidence of valuation. However, by leaving the jury with only one task -- to determine whether the State presented sufficient

evidence to prove, beyond a reasonable doubt, that the value of the stolen items exceeded $500 -- defense counsel was able to make the far stronger argument reflected in his closing argument.

Although this strategy was legally plausible, it was not without risks. As the Court explained in State v. Williams, 219 N.J. 89, 100 (2014), "when a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy -- a strategy not unreasonable on its face but one that did not result in a favorable outcome -- his claim may be barred by the invited-error doctrine." We are satisfied defendant made a strategic decision to leave the jury with only one option, hoping that the odds favored acquittal based on the question of valuation as framed by the court in the verdict sheet. Defendant must now live with the consequences of this decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2783-14T2