**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4706-17T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FORREST THOMAS, a/k/a
MALIK FOREST, THOMAS
FORREST, FORREST MALIK,
FOREST THOMAS, and
TYRONE THOMAS,

     Defendant-Appellant.

_____

Submitted April 2, 2019 – Decided May 17, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 10-07-1771.

Joseph E. Krakora, Public Defender, attorney for appellant (Kevin G. Byrnes, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E.

Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from an order entered by the Law Division on May 21, 2018, which denied his petition for post-conviction relief (PCR). We affirm.

I.

On July 23, 2010, an Essex County grand jury returned an indictment charging defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1), (2); and second-degree disturbing human remains, N.J.S.A. 2C:22-1(a)(1). The alleged victim was Carol Spratt.

Defendant was tried before a jury and, at the trial, evidence was presented which showed that in 2005, Spratt and her daughter Susan Rivas moved to an apartment at New Community Gardens on Morris Avenue in Newark. Defendant, who was Rivas's boyfriend, moved into the apartment with Spratt and Rivas. Rivas died shortly thereafter, but defendant continued to reside in the apartment with Spratt.

Spratt suffered from emphysema and required an oxygen tank at all times. She also used a wheelchair and rarely left the apartment. Spratt claimed that at times defendant stole her rent money and food stamps, and also engaged in

abusive behavior. In January 2010, Spratt had defendant permanently banned from the building. Despite the ban, defendant returned a few days later. He was escorted out of the building and the building's manager told him he could return that day to collect his belongings.

The State alleged that defendant returned to the apartment and killed Spratt. According to the medical examiner, the perpetrator grabbed Spratt by the wrists and compressed her neck with a significant, sustained force. That force prevented Spratt from breathing, and stopped the flow of blood from her heart to her head.

Defendant kept Spratt's dead body in the apartment for the next several days. On January 14, 2010, defendant called the aide who had provided care to Spratt, and told her that Spratt had fallen, broken her ribs, and was in the hospital. The aide went to the apartment the next day. Defendant exited the apartment, closed the door quickly behind him, and told the aide that Spratt was "okay."

Defendant disposed of Spratt's body several days later. He placed the body in two garbage bags, put the bags in a shopping cart, and covered the bags with clothes and other items. At around 3:00 a.m. on January 18, 2010, defendant exited the building pushing the shopping cart. On his way out,

3

defendant told the security guard he had collected his possessions and would not be around anymore.

Defendant discarded the body near a dumpster behind a building on South Orange Avenue, and two scrap collectors discovered the body. The following day, the building's superintendent saw a note on Spratt's door, which stated that she should not be disturbed because she was tired and sleeping. Later that day, defendant approached Spratt's neighbor and offered to sell him items from the apartment. Defendant said Spratt had fallen, was in the hospital, and was planning to move to Florida.

On January 20, 2010, investigators from the Essex County Prosecutor's Office went to Spratt's building and spoke with the manager, who identified Spratt from an autopsy photo. The investigators were proceeding to Spratt's apartment, when they encountered defendant. He told them he was going to visit Spratt at the hospital. He agreed to be interviewed.

At the police station, defendant was advised of his rights and provided a statement. He claimed that he returned to the apartment on January 13 or 14, 2010, and found that Spratt had fallen. He claimed her oxygen cord was wound around her neck and she was gasping for air.

4

Defendant said he picked Spratt up, unwrapped the cord, and put her in bed. Spratt allegedly stated that she was all right. Several hours later, defendant found Spratt dead. He admitted that three days later, he placed Spratt's body in two garbage bags, put the body in a shopping cart, and left her near the dumpster where the body was found.

When the detectives left the interview room, defendant removed Spratt's ATM and credit cards from his wallet and attempted to hide them behind the molding in the interview room. Defendant's actions were recorded by the surveillance system.

The jury found defendant guilty of murder and disturbing human remains. The trial court thereafter sentenced defendant to life imprisonment for murder, with sixty three and three-quarter years of parole ineligibility, pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2. The court also sentenced defendant to a concurrent ten-year term for disturbing human remains. Defendant appealed from the judgment of conviction and argued:

> POINT I
> DAMAGING HEARSAY STATEMENTS BY THE DECEDENT WERE IMPROPERLY ADMITTED INTO EVIDENCE OVER OBJECTION. WHILE THE DECEDENT'S STATEMENTS INDICATING SOLELY HER STATE OF MIND – I.E., HER INTENT TO HAVE [DEFENDANT] EVICTED – MAY HAVE BEEN ADMISSIBLE UNDER THE "STATE OF

MIND" HEARSAY EXCEPTION BECAUSE THEY PROVIDED A MOTIVE TO KILL, HER STATEMENTS DETAILING PRIOR BAD ACTS BY DEFENDANT WERE PLAINLY SIMPLY INADMISSABLE HEARSAY WHICH CLEARLY TAINTED THE JURY'S DELIBERATIONS ON GUILT.

POINT II
UNDER BOTH THE CONFRONTATION GUARANTEES OF THE SIXTH AMENDMENT (AS APPLIED TO THE STATES THROUGH THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT) AND THE STATE CONSTITUTION, AS WELL AS UNDER OUR OWN STATE EVIDENCE RULES, THE ADMISSION IN THIS CASE, OF ONE MEDICAL EXAMINER'S FINDINGS THROUGH THE TESTIMONY OF ANOTHER MEDICAL EXAMINER WAS THE MOST BASIC OF VIOLATIONS OF DEFENDANT'S RIGHTS.  (Not Raised Below)[.]

POINT III
WHEN THE JURORS REPORTED A DEADLOCK ON THE MURDER COUNT, THE JUDGE WAS OBLIGATED TO GIVE THE STATE v. CZACHOR[, 82 N.J. 392, 1980)] DEADLOCK INSTRUCTION TO THEM.  (Not Raised Below).

[State v. Thomas, No. A-2706-12 (App. Div. Aug. 31, 2015) (slip op. at 2) (footnote omitted).]

We rejected these arguments and affirmed defendant's convictions.  Ibid.  The Supreme Court denied defendant's petition for certification.  State v. Thomas, 223 N.J. 558 (2015).

6

In January 2016, defendant filed a petition for PCR. Defendant was assigned counsel who argued that: (1) PCR claims must be thoroughly investigated by counsel; (2) the court has authority to order discovery on a showing of good cause; (3) defendant was denied due process because he "was improperly excluded from . . . trial court proceedings"; (4) defendant was denied the "right to testify on his own behalf"; (5) defendant was denied a fair trial due to prosecutorial misconduct; (6) defendant was denied the right of confrontation by the admission of the medical examiner's findings through the testimony of another medical examiner; (7) the trial judge improperly handled the jury's questions and the response to the jury's reported deadlock; (8) defendant "was denied the effective assistance of trial counsel"; (9) defendant was denied a fair trial due to the cumulative effect of the errors complained of; (10) defendant "was denied the effective assistance of appellate counsel"; (11) an evidentiary hearing is required on his PCR petition; and (12) the claims in the petition are not subject to any procedural bar.

On May 21, 2018, the PCR court filed an order denying relief. In an accompanying opinion, the court stated that claims 3, 4, 5, 6, 7, and 9 were barred by Rules 3:22-4 and 3:22-5 because they were raised or should have been raised on defendant's direct appeal and the exceptions in Rule 3:22-4 did not

7

apply. The court also found no merit in defendant's other claims, and determined that defendant was not entitled to an evidentiary hearing on his petition. This appeal followed.

On appeal, defendant's attorney argues:

POINT I
THE DEFENDANT WAS DENIED A COMPLETE DEFENSE AS A RESULT OF INEFFECTIVE TRIAL COUNSEL, WHO FAILED TO INVESTIGATE THE CASE ADEQUATELY.

POINT II
THE PCR COURT ERRONEOUSLY APPLIED A PROCEDURAL BAR TO DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF.

POINT III
TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE HAD OFF THE RECORD COMMUNICATIONS WITH THE TRIAL COURT AND THE PROSECUTOR WITHOUT THE DEFENDANT AND HE FAILED TO INFORM THE DEFENDANT ABOUT THE NATURE OF THOSE COMMUNICATIONS.

POINT IV
THE DEFENDANT WAS COERCED INTO FORGOING HIS TESTIMONY DUE TO TRIAL COUNSEL'S INEFFECTIVE REPRESENTATION.

POINT V
TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO EGREGIOUS MISCONDUCT BY THE PROSECUTOR, AND APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE

A-4706-17T1

PROSECUTORIAL MISCONDUCT AS PLAIN ERROR.

POINT VI
TRIAL COUNSEL WAS INEFFECTIVE BEAUSE HE IMPROPERLY WAIVED THE DEFENDANT'S RIGHT OF CONFRONTATION, PERMITTING THE STATE TO PRODUCE RESULTS FROM THE AUTOPY WITHOUT PRODUCING THE WITNESS WHO PERFORMED THE AUTOPSY.

POINT VII
TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY CONSENTING TO AN ERRONEOUS INSTRUCTION AND FAILING TO OBJECT TO THE MANNER IN WHICH THE TRIAL COURT RESPONDED TO JURY QUESTIONS.

POINT VIII
THE CUMULATION OF ERRORS BY TRIAL COUNSEL AND APPELLATE COUNSEL RESULTED IN A FUNDAMENTALLY UNFAIR PROCESS.

POINT IX
THE DEFENDANT IS ENTITLED TO AN EVIDENTIARY HEARING.

POINT X
THE DFENDANT IS ENTITLED TO DE NOVO REVIEW AND NO DEFERENCE SHOULD BE GIVEN TO THE ERRONEOUS CONCLUSION BELOW.  (Not Raised Below).

A-4706-17T1

II.

Defendant argues that the PCR court erred by finding that he was procedurally barred under <u>Rules</u> 3:22-4 and 3:22-5 from raising claims he was denied the effective assistance of trial and appellate counsel.

Before the PCR court defendant claimed that: (1) trial counsel failed to object to the court's handling of a jury question, and appellate counsel should have raised this issue on appeal; (2) trial counsel failed to object to the court's response to the jury's reported deadlock; (3) trial counsel improperly excluded him from certain proceedings; (4) trial counsel improperly denied defendant of his right to testify on his own behalf; (5) counsel failed to object at trial to alleged prosecutorial misconduct; and (6) counsel erred by failing to object to the State proffering testimony about the autopsy from Dr. Roger Mitchell, rather than Dr. John Stash, who performed the autopsy.

Defendant contends these claims of ineffective assistance of counsel could not have been raised on direct appeal. However, we need not address defendant's argument because the record is sufficient to address the merits of these claims in this appeal.

A-4706-17T1

# III.

As noted, defendant argues that he was denied the effective assistance of trial and appellate counsel. We disagree.

To establish ineffective assistance of counsel, a defendant must satisfy the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984), and later adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). Under the test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 687. Defendant must establish that counsel's performance "fell below an objective standard of reasonableness" and "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687-88.

Defendant also must establish "that the deficient performance prejudiced the defense." Id. at 687. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Id. at 694.

A-4706-17T1

A. Spratt's Medical Records

Defendant argues that his trial attorney was deficient because he did not obtain Spratt's medical records. Defendant contends the medical records would have supported an argument that Spratt's death was the result of her extremely poor medical condition, advanced age, and a possible accident.

Defendant argues that the medical records were vital to his argument that the State failed to prove causation. He argues that the PCR court erred by finding that his attorney engaged in a reasonable strategy when he elected not to obtain the medical records.

We need not consider whether counsel reasonably elected, as a matter of trial strategy, not to obtain Spratt's medical records. Assuming that counsel erred by failing to obtain these records, defendant did not establish that he was prejudiced by counsel's error.

Spratt's medical records showed that she was suffering from chronic obstructive pulmonary disease, and required an oxygen tank to assist her breathing. At trial, Mitchell testified that the autopsy showed Spratt's neck had been compressed with a significant, sustained force, which stopped the flow of blood between her heart and head and caused her death. Defendant has not shown that if Spratt's medical records had been introduced into evidence, they

12

would have led the jury to conclude that Spratt died as the result of some other cause.

On appeal, defendant argues that the jury should have been permitted to consider whether Spratt's medical conditions were an "alternative theory of causation." However, in support of his PCR petition, defendant did not present an affidavit or certification of a qualified medical professional, with an opinion that Spratt died due to her medical conditions, rather than a neck compression resulting from the application of a significant, sustained force.

B. Exclusion of Defendant from Trial Proceedings

Defendant argues that his trial counsel was ineffective because counsel purportedly participated in conferences held in the judge's chambers without defendant. Defendant has not, however, presented any evidence that such conferences took place or what may have occurred during these conferences. Moreover, defendant's right to be present at trial only extends to the "'critical stage[s]' of the trial" court proceedings. See State v. Reevey, 417 N.J. Super. 134, 149 (App. Div. 2010) (quoting State v. Zenquis, 251 N.J. Super. 358, 363 (App. Div. 1991), aff'd, 131 N.J. 84 (1993)). Defendant has not shown that the alleged conferences were critical stages of his trial proceedings. He also has not

A-4706-17T1

shown that his failure to be present at any in-chambers conference interfered with his right to maintain a defense.

C. Defendant's Decision Not to Testify at Trial

Defendant argues that his trial attorney coerced him to decide against testifying at trial. The record does not support defendant's argument. At trial, the judge questioned defendant on the record concerning his decision not to testify:

> THE COURT: Mr. Thomas, [your attorney] indicated to me you're electing not to testify in this case. Correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you had ample opportunity to confer with [your attorney] regarding that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And based upon your conversations with him and your full and complete consultation with him, you've come to the decision not to testify. Is that correct.
>
> THE DEFENDANT: Yes, it is.
>
> . . . .
>
> THE COURT: Nobody's forced or coerced or threatened you to do this; you're doing this of you own free will?

THE DEFENDANT:     Yes.

THE COURT:     You've been represented by [your attorney] throughout these proceedings.     Are you satisfied with his representation in all respects?

THE DEFENDANT:     Yes.

As the record shows, defendant never asserted his attorney had coerced him to decide against testifying.  Defendant also told the judge that he was satisfied with his attorney's representation "in all respects[.]"  Thus, the record provides no support to defendant's claim that his attorney coerced him to decide not to testify.

D. Alleged Prosecutorial Misconduct

Defendant claims his trial attorney erred by failing to object to alleged prosecutorial misconduct.  He also contends appellate counsel was deficient because counsel did not raise prosecutorial misconduct on appeal.

Defendant asserts that after certain witnesses answered questions, the prosecutor stated "okay," thereby suggesting that the prosecutor affirmed or concurred in the testimony.  Defense counsel objected and the judge cautioned the prosecutor.  Defendant contends the prosecutor continued to makes these improper comments.

15

Defendant also asserts that at one point, the prosecutor picked up items from counsel's table and threw them in the air, purportedly out of "disdain and disgust." In addition, defendant states that the trial judge referred at some point to the prosecutor as "incorrigible." It is not clear from the record what prompted the judge to make that comment.

Defendant's attorney may have erred by failing to repeat his objections to the prosecutor's comments, and by failing to object when the prosecutor threw certain items in the air. However, defendant has not shown the result here probably would have been different if his attorney had raised these objections. Defendant also has not shown that his appeal would have been decided differently if appellate counsel had raised the alleged prosecutorial misconduct on appeal.

E. Failure to Object to Testimony Regarding Autopsy

Defendant further argues that his trial attorney erred by failing to object to Mitchell's testimony about the autopsy report on the ground that Mitchell did not perform the autopsy. In defendant's direct appeal, we held that defendant had waived his Confrontation Clause objection to Dr. Mitchell's testimony because he did not raise the objection at trial. Thomas, slip op. at 30.

In our opinion, we noted that on cross-examination, defense counsel had "attempted to obtain helpful testimony" from Mitchell that Spratt may have choked on her oxygen tube. Ibid. We also pointed out that defense counsel attempted to show that because Mitchell did not perform the autopsy, his testimony might not be reliable. Ibid. Defendant's attorney made the same point in his summation. Ibid.

We stated that, "Defendant made a clear choice to pursue a trial strategy of attempting to cast doubt on Mitchell's conclusions by focusing the jury's attention on the fact he did not perform the autopsy in this case." Id. at 30-31. We held that under the circumstances, defendant could not claim that Mitchell's testimony deprived him of his right to confrontation, and counsel's failure to object was not an error "clearly capable of producing an unjust result." Ibid. (quoting State v. Williams, 219 N.J. 89, 99 (2014)).

For essentially the same reasons, we reject defendant's claim that he was denied the effective assistance of counsel because his attorney failed to object to Mitchell's testimony on Confrontation Clause grounds. Defense counsel pursued a reasonable trial strategy of attempting to discredit Mitchell's testimony because he did not perform the autopsy. Moreover, it is reasonable

17

to assume that if counsel had objected to Mitchell's testimony, the State would have presented testimony from the doctor who performed the autopsy.

F. Failure to Object to the Court's Handling of Jury Question

Defendant asserts his trial attorney was deficient because he consented to an erroneous response to a question that the jury sent to the court during deliberations. The jury asked whether the shopping cart introduced into evidence was "the same cart used to hold the body." After consulting with counsel, the judge told the jury that the answer to the question was "Yes." Another note from the jury followed, and it included additional questions regarding the shopping cart.

Defense counsel then asserted that the judge should not have responded "Yes" to the previous question. The judge agreed and instructed the jury that his previous answer was not complete. The judge stated

> The answer is "yes" but . . . I can't answer questions . . . you pose to me because they're factual questions.
>
> . . . .
>
> [Y]ou have to listen to each other . . . and reach a decision as to whether or not [the] evidence . . . or lack of evidence . . . is sufficient information for you to make a decision as to guilt or innocence, fairly and impartially.

On appeal, defendant argues that the judge's instruction was confusing and erroneous because the answer to the jury's initial question should not have been "Yes," and the additional instruction was contradictory. He contends that because the instruction would have a prejudicial impact on the jury's findings of fact, his trial attorney should have raised a timely and specific objection. Defendant also contends the instruction improperly shifted the burden of proof to defendant to produce evidence of his innocence.

Again, we disagree. It appears the judge may have erred by responding to the jury's first question by stating, "Yes." It seems that the assistant prosecutor and the judge also assumed that the shopping cart in evidence was the same shopping cart used to move Spratt's body. In any event, defendant has not shown that counsel's error prejudiced the defense. As noted, the judge corrected the mistake by providing a timely instruction.

Moreover, the amended instruction did not shift the burden of proof to defendant. Defendant contends the instruction was in conflict with the earlier instruction in which the judge told the jurors that the State had the burden of proof on all elements of the charged offenses. The judge's instruction did not relieve the State of its burden of proof, which was clearly described in the court's final instructions.

G. Failure to Object to Judge's Response to Jury's Alleged Deadlock

In defendant's direct appeal, he argued that the judge erred by failing to give the jury a Czachor charge after the jury allegedly reported that it was deadlocked. Thomas, slip op. at 32. We noted that defendant had not objected to the charge that the trial court provided. Ibid.

We pointed out that in Czachor, the Court approved an instruction to be used when a jury reports it is deadlocked, which directs the jury to continue deliberating but reminds the jurors they have an obligation to hold onto honest convictions. Id. at 34-35 (citing Czachor, 82 N.J. at 405 n.4). We reviewed the trial record and noted that the judge did not view the note from the jury as reporting "a true deadlock." Id. at 35. We stated that "[t]he court and counsel reasonably determined the jury could not be truly deadlocked after deliberating for two non-consecutive hours after hearing days of testimony in a murder trial." Id. at 35-36.

We held that there was "nothing coercive about the trial court's supplemental instructions" and the judge "did not violate the core holding of Czachor[.]" Id. at 36. We stated the charge was not meant to address a jury deadlock, "but was more along the lines of a reminder to the jury to cooperate

and continue deliberating." Ibid. (citing State v. Adim, 410 N.J. Super. 410, 425 (App. Div. 2009)). We held that the court's instructions were proper. Ibid.

In this appeal, defendant asserts that his trial attorney erred by failing to object to the instructions. We disagree. The judge properly instructed the jury to continue its deliberations, and there was no basis for an objection. Defendant has not shown that counsel erred by failing to object or that he was prejudiced by the manner in which counsel handled the issue.

We therefore conclude that defendant failed to establish that he was denied the effective assistance of trial or appellate counsel.

IV.

Defendant argues that even if the errors he cites did not individually constitute reversible error, in the aggregate, they denied him of his constitutional right to a fair trial or required an evidentiary hearing. Our Supreme Court has held that "even when an individual error or series of errors does not rise to reversible error, when considered in combination, their cumulative effect can cast sufficient doubt on a verdict to require reversal." State v. Jenewicz, 193 N.J. 440, 473 (2008) (citing State v. Koskovich, 168 N.J. 448, 540 (2001)). The cumulative error principle does not apply in this case. As we have explained, there were no series of errors that, when considered in combination, cast

21

sufficient doubt on the jury's verdict to require a new trial or an evidentiary hearing.

## V.

Defendant argues that the PCR court erred by failing to conduct an evidentiary hearing on his PCR petition. Such a hearing is only required if defendant presents a prima facie case in support of the petition, the court has determined that there are material issues of fact that cannot be resolved based on the existing record, and an evidentiary hearing is required to resolve the claims presented. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). Because defendant failed to establish a prima facie case for PCR, and the existing record was sufficient to resolve his claims, an evidentiary hearing was not required.

## VI.

Defendant filed a pro se supplemental brief in which he argues: (1) trial and appellate counsel were ineffective "in failing to conduct an adequate pretrial investigation[,]" by "fail[ing] to consult" with him, and by failing to object to Mitchell's testimony; (2) the PCR court improperly "applied a procedural bar" to his petition; (3) he was coerced into electing not to testify; (4) prosecutorial misconduct deprived him of a fair trial; (5) trial counsel was ineffective in

22

waiving his confrontation rights and failing to call the medical examiner who performed the autopsy; (6) trial counsel was ineffective in failing to object to the trial court's instructions; (7) the cumulative error principle requires reversal of his conviction; and (8) an evidentiary hearing is required. To the extent these arguments have not been addressed previously, they lack sufficient merit to warrant discussion. See R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4706-17T1