**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2632-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GUAROA SOLANO-TRINIDAD,
a/k/a GUAROA SOLANO,

    Defendant-Appellant.

_____

Submitted February 11, 2019 – Decided June 19, 2019

Before Judges Sumners and Mitterhoff.

On appeal from Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 12-07-0588.

Joseph E. Krakora, Public Defender, attorney for appellant (Suzannah Brown, Designated Counsel, on the brief).

Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Ali Y. Ozbek, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Guaroa Solano-Trinidad appeals from his jury conviction for third-degree terroristic threats involving a threat to commit a crime of violence. Defendant contends:

> POINT I
>
> THE TRIAL COURT ERRED BY PERMITTING THE STATE TO IMPROPERLY INTRODUCE IRRELEVANT EVIDENCE TO PROVE [DEFENDANT'S] PROPENSITY TO COMMIT THE CRIMES CHARGED, THEREBY PREJUDICING HIS RIGHT TO A FAIR TRIAL.
>
> POINT II
>
> [DEFENDANT'S] TERRORISTIC THREAT CONVICTION MUST BE REVERSED DUE TO PROSECUTORIAL MISCONDUCT DURING SUMMATION. (Not raised below)
>
> A. THE PROSECUTOR MISSTATED THE EVIDENCE.
>
> B. ADDITIONAL IMPROPRIETY OF THE PROSECUTOR'S COMMENTS REGARDING [DEFENDANT'S] CRIMINAL HISTORY.
>
> C. IMPROPER COMMENT REGARDING THE OBLIGATIONS OF THE JURY.
>
> POINT III
>
> [DEFENDANT'S] TERRORISTIC THREAT CONVICTION MUST BE REVERSED DUE TO ERRORS IN THE JURY CHARGE. (Not raised below)

A.    ERRORS IN THE TERRORISTIC THREATS CHARGE REQUIRE REVERSAL.

B.    THE FAILURE TO CHARGE HARASSMENT AS A LESSER-INCLUDED OFFENSE OF TERRORISTIC THREATS REQUIRES REVERSAL.

After reviewing the record in light of the contentions advanced on appeal, we affirm.

I

Around noon on January 26, 2012, defendant and his disabled mother took a taxicab home from her doctor's appointment in Paterson. During the ride, defendant and the taxi driver argued over the proper route, which prompted the driver to direct defendant and his mother to exit the vehicle, leaving them short of their destination. Later that same day, while driving to make a complaint with the taxi company, defendant spotted the taxi driver and pulled up next to him. Defendant got out of his car, walked up to the taxicab and slammed a black object on the roof, causing the taxi driver to immediately drive away. One of the State's witnesses testified that defendant had a black gun in his hand and pointed it at the taxi driver while three other passengers and two children were inside. However, the taxi driver and one other State witness, were uncertain of whether the object in defendant's hand was a gun. Defendant claimed he struck

3

the taxi with a cell phone. The State did not recover the gun that was allegedly used by defendant in the incident.

Upon arriving at the taxi company, defendant exclaimed that the taxi driver "needed to leave Paterson, because if he sees him he[] was going to end up in St. Joseph's Hospital." Defendant left the office and drove to the Taxi Commissioner, located in the same building as the police station. While speaking with the Commissioner, defendant learned a complaint was lodged against him, and he decided to inquire about the issue with the police. Moments after leaving the Commissioner's office, defendant went into the police station, where he was placed under arrest.

Following an eight-day trial, the jury found defendant guilty of third-degree terroristic threats involving a threat to commit a crime of violence and imminent death. They determined he was not guilty of fourth-degree aggravated assault with a firearm, N.J.S.A. 2C:12-1(b)(4); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree certain persons not to have weapons due to prior convictions, N.J.S.A. 2C:39-7(b).

II

In Point I, defendant contends the State improperly solicited irrelevant and bad character testimony from him on cross-examination regarding his reasons for leaving his past employment. We disagree.

Testifying in his defense, defendant was allowed to testify on direct examination about his relationship with his mother, insinuating it was his concern for her that caused him to be enraged at the taxi driver. The trial judge overruled the prosecutor's relevancy objection, who argued:

> This is clearly just a clear play for sympathy here. It's already been brought up. I think counsel [has] already had some leeway, the defense has had some leeway here with this. And I think this is just padding at this point.

Defense counsel countered:

> It's very relevant . . . for this issue, he's charged with terroristic threats. We know by the charge the [c]ourt gives to the jury it's something to send anger and . . . it's just to annoy. That's not a terroristic threat. This was his mother. She got caught in the middle of [nowhere] in a high crime area. She was an invalid. She had to use her cane. She's disabled. He is PO'd, he's aggravated.
>
> What made him aggravated if he does nothing for his mother? If [he] has no relationship, what's the difference? I'm not going to harp on it, but I think to bring out . . . just basically what he does, basically for her and she's already testified to it anyway.

5

The judge found the testimony relevant, stating:

> The relevancy is the nature of the charges and . . . now the defense has opened the door with regard to his relationship. The State has the right now because his character is at issue now that he's a person who did what he did to help his mother. So I will allow you [on] cross [to] get into that area.

As a result, the State sought to cross-examine defendant regarding his erratic past employment for various taxi companies, to which defense counsel objected on grounds that the testimony was irrelevant. The State countered:

> [T]he relevancy . . . is that [defense counsel] is, obviously, going to now argue that [defendant] was simply . . . it was an isolated incident that his mother was left on the side of the road and he was irate . . . and alike. I want to know why he left these location[s] . . . because it's very sporadic employment.

The judge allowed the line of questioning, but cautioned:

> [Y]ou already established a point that . . . people did not trust him that came out. He said he would agree he was not a popular guy. Now if you ask him how many jobs did he have in [twenty-two] years and did he last anything more than six months, a year, you can move on. On those jobs you've got to focus on if he stayed for two or three years at a job, why am I spending time on something. If he spent two months, okay.

The State continued with its line of questioning regarding defendant's past employment, and after asking defendant about his employment at a clothing

6

store, defense counsel again objected on relevancy grounds. The State countered, arguing:

> [D]efense suggests [the taxi driver incident] was just a fleeting episode. My argument . . . is that his personality, how can I say it, . . . he is a person prone to anger and [self-righteousness] such that . . . he would actually threaten somebody with a gun.
>
> . . . .
>
> Some[one] who is prone, I would submit, that rather than to counter the argument that this was just a fleeting episode, that he has a history of anger an outbursts.

The judge, noting his earlier remarks that defendant opened the door with his testimony about his affection toward his mother, allowed the testimony, subject to his discretion to exclude any testimony that would be unduly prejudicial to defendant. He further found that although the testimony had minimal probative value, it was not outweighed by its prejudicial effect to defendant.

Defendant argues before us that the testimony was irrelevant and constituted inadmissible evidence of his bad character in violation of N.J.R.E. 404(a) and 404(b). The testimony, he reasons, was unduly prejudicial because the jury could infer that he is "a difficult, angry person." He asserts further that even if the testimony was relevant, he never referred to his good character, and

therefore did not open the door for the State to introduce evidence of his bad character through his past employment behavior. He thus posits the judge should have either ordered an N.J.R.E. 104 hearing, provided a limiting instruction to the jury on the appropriate and prohibited uses of the evidence, or excluded the testimony.

We review a trial judge' evidentiary rulings on an abuse of discretion standard. State v. J.M., 225 N.J. 146, 157 (2016). N.J.R.E. 404 governs the admissibility of character evidence. Subpart (a) generally prohibits "[e]vidence of a person's character . . . including a trait of care or skill or lack thereof . . . for the purpose of proving that the person acted in conformity therewith on a particular occasion[.]" Subpart (b) provides that evidence of other crimes or bad acts is generally not admissible, unless used for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute."

That said, the prosecution presented testimony regarding defendant's past employment history to refute defendant's testimony that his aggressive and threatening response to the taxi driver was based solely out of care towards his mother, and an isolated incident. Thus, defendant's claim is barred by the

doctrine of invited error. Although the judge did not give a limiting instruction, the doctrine bars any claim of prejudice.

Under invited error, "trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal . . . .'" State v. Bailey, 231 N.J. 474, 490 (2018) (quoting State v. A.R., 213 N.J. 542, 561 (2013)). "The doctrine of invited error does not permit a defendant to pursue a strategy of allowing a . . . witness to testify — hopefully to his advantage — and then when the strategy does not work out as planned, cry foul and win a new trial." State v. Williams, 219 N.J. 89, 101 (2014). Our Supreme Court declared, "[t]o justify reversal on the grounds of an invited error, a defendant must show that the error was so egregious as to 'cut mortally into his substantive rights . . . .'" State v. Ramseur, 106 N.J. 123, 282 (1987) (quoting State v. Harper, 128 N.J. Super. 270, 277 (App. Div. 1974)). Defendant cannot do that.

Defendant's direct examination testimony "opened" the door by testifying that he was only prone to anger because his mother was told to unceremoniously exit the taxicab. The State's cross-examination strategy to make the jury aware of defendant's disruptive conduct at multiple prior jobs was relevant because it was in direct response to his attempt to persuade the jury that he was only angry

at the taxi driver due to the manner in which the taxi driver treated his mother. Hence, the judge did not abuse his discretion to admit evidence of defendant's past employment history.

III

In Point II, defendant argues for the first time on appeal that the prosecutor engaged in misconduct by making four statements during closing argument that were prejudicial because they misstated the evidence. Because defendant made no objection to any of the prosecutor's comments, we review his challenge for plain error, meaning that defendant must demonstrate that an error was "clearly capable of producing an unjust result." R. 2:10-2. In other words, the error was "'sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[.]'" State v. Taffaro, 195 N.J. 442, 454 (2008) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). Defendant must prove that a plain error was clear and obvious and that it affected his substantial rights. State v. Chew, 150 N.J. 30, 82 (1997) (citation omitted).

Before we address the closing remarks that allegedly constitute prosecutorial misconduct, we point out the principles that guide our review. "Prosecutorial misconduct may be grounds for reversal where the misconduct 'was so egregious that it deprived the defendant of a fair trial.'" State v. Kane,

A-2632-16T1

449 N.J. Super. 119, 140 (App. Div. 2017) (citing State v. Frost, 158 N.J. 76, 83 (1999)). While a prosecutor "in . . . summation may suggest legitimate inferences to be drawn from the record," a prosecutor "commits misconduct when [the summation] goes beyond the facts before the jury." State v. Harris, 156 N.J. 122, 194 (1998). "The challenged comment 'must have been clearly and unmistakably improper, and must have substantially prejudiced defendant's fundamental right to have a jury fairly evaluate the merits of his defense.'" State v. McGuire, 419 N.J. Super. 88, 150 (App. Div. 2011) (quoting State v. Timmendequas, 161 N.J. 515, 575 (2001)).

Generally, if no objection was made regarding the prosecutor's remarks, they will not be deemed prejudicial. Kane, 449 N.J. Super. at 141 (quoting Frost, 158 N.J. at 83). "The failure to object suggests that defense counsel did not believe the remarks were prejudicial at the time they were made." Frost, 158 N.J. at 84. "The failure to object also deprives the court of an opportunity to take curative action." Ibid. (citing State v. Bauman, 298 N.J. Super. 176, 207 (App. Div. 1997)).

We now separately address the purported statements of prosecutorial misconduct, highlighting the specific parts defendant alleges are egregious.

11

<u>Remark Number One</u>

> Prosecutor:
> And what does he say? He tells them if I see [the taxi driver] . . . he better get out of . . . town, or he's going to end up in St. Jo[seph's Hospital]. What is he telling you? He's going to hurt him. He's going to injure him or wor[se], ladies and gentleman. <u>And how's he going to do that, I submit to you with a gun. And, again, the defendant doesn't deny this he admits it</u>.
>
> [(Emphasis added).]

Defendant stresses the prosecutor improperly urged the jury to make a factual finding that defendant intended to shoot the taxi driver, and misstated the evidence by inferring that defendant admitted to attempting to kill the taxi driver, when there was no such evidence to support that assertion. As support, he cites <u>State v. Atwater</u>, 400 N.J. Super. 319 (App. Div. 2008), where this court ruled that a prosecutor's remarks were reversible error. There, we concluded that the prosecutor's remarks "refer[ing] to defendant as 'drunk' or 'blotto' when the evidence did not support the inference that defendant met the legal standard for intoxication" would, alone, lead to reversible error. <u>Id.</u> at 337. We were also "offended by the prosecutor's comment: 'he's closing in on the kill[,]'" without any "evidence whatsoever that defendant acted intentionally or that he was in any way focused on hitting the victims, as this remark suggests." <u>Ibid.</u> We are unpersuaded.

Contrary to defendant's assertions, the closing remarks in <u>Atwater</u> are unlike the closing remarks in this case. Here, despite the fact that a gun was never recovered, there is a factual basis for the prosecutor's statement that defendant threatened to injure the taxi driver with a gun. Thus, it is a fair comment based upon the trial testimony of one witness that defendant struck the taxicab's roof with a gun. Consequently, the prosecutor's statement was a legitimate inference based on the record. The fact that the jury found defendant not guilty of the weapons related charges demonstrates the prosecutor's remark did not produce an unjust result.

Remark Number Two

> Prosecutor:
> You saw [defendant] on the stand. He knows better than everybody else. And no one is going to tell him what's what. He's going to tell everyone what's what. And when he feels disrespected . . . he takes action. <u>He takes a gun and he stalks that man and he tells him, he tells everyone, he makes it clear you're going to end up in St. Jo[seph's Hospital]. I'm going to hurt you.</u>

> [(Emphasis added).]

Defendant contends the statement was prejudicial for two reasons. First, the accusation that the taxi driver would end up in the hospital was not made directly to the taxi driver, but to a third party, constituting a misstatement of the testimony presented at trial. Second, there was no evidence to support the notion

that defendant "stalked" the taxi driver because his testimony revealed that he happened to come across the taxi driver while he was on his way to the taxi company to file a complaint.

The statement is a reasonable inference from the facts provided. While defendant claimed he coincidentally saw the taxi driver, neither the State nor the jury had to accept defendant's assertion. Although the term "stalks" is strong language, it was reasonable for the prosecutor to infer defendant was looking for the taxi driver given defendant's conduct of pulling in front of the taxicab to block it, and then angrily bang on the hood with an object before the taxi driver was able to get away. Defendant's anger and retribution towards the taxi driver was further evidenced by his subsequent threat that if he did not leave town, he might end up in the hospital. We discern no unjust result from the statement.

Remark Number Three

> Prosecutor:
> So, ladies and gentleman, you've heard the [State's] witnesses. . . . They came here and just told you what they saw.
> Who has . . . skin in the game? The defendant. A man who[] not once, not twice, not three times [sic], been convicted of [third-degree] crimes. He's the one. He corroborates everything they said. But he wants to put that one spin, but it's the critical one. It wasn't a gun.
>
> [(Emphasis added).]

Defendant argues the prosecutor's misstatement of his criminal history constitutes reversible error. He pled guilty to three third-degree offenses, which arose from a single incident. However, he argues the prosecutor's assertion that he was convicted of three crimes infers that he was guilty for crimes related to three separate incidents. He maintains the prosecutor's use and misstatement of his criminal history was used to show "that he had a lot to lose if he were convicted," and, therefore, unfairly prejudiced him during trial. We disagree.

There is no question that the reference to the convictions were a proper attempt by the State to impeach defendant's testimony. See State v. Brunson, 132 N.J. 377, 394 (1993). It was fair comment for the prosecutor to stress that defendant had three convictions without explaining they arose from a single incident. The fact that defendant was only convicted of terroristic threats indicates the statement did not cause an unjust result. Therefore, defendant was not substantially prejudiced, requiring reversal of his conviction.

<u>Remark Number Four</u>

> Prosecutor:
> Ladies and Gentleman, now it's your time. You have the last word now. I submit to you when you review all the evidence you will be convinced beyond a reasonable doubt each and every one of the crime[s] as charged were proven. <u>And I ask you to do your duty and find each and every element proven beyond a</u>

> reasonable doubt.  Your duty is that you must find
> defendant guilty.
>
> [(Emphasis added).]

Defendant contends the statement improperly instructed the jury they were obligated to find him guilty on all crimes, rather than make their own determinations based on the evidence presented at trial.  We disagree.

Prosecutors are entitled to zealously argue the merits of the State's case. State v. Smith, 212 N.J. 365, 403 (2012).  Here, the prosecutor was merely telling the jurors that in fulfilling their oath as jurors, they should find defendant guilty of all crimes charged based upon the evidence presented during the trial. There was no unjust result created by the statement.

In sum, none of the prosecutor's remarks constitutes prejudicial error. Moreover, the fact that the jury only found defendant guilty of terroristic threats belies many of defendant's contentions.

IV

Finally, in Point III defendant asserts for the first time on appeal that there were two errors in the jury charge regarding terroristic threats and the failure to include the lesser-included offense of harassment which each warrant a reversal of his conviction because they were capable of leading the jury to reach an unjust

16

result. R. 2:10-2; see Macon, 57 N.J. at 336. We discern no merit to defendant's contentions.

To be sure, we recognize that "[a]ppropriate and proper charges to a jury are essential for a fair trial[,]" State v. Green, 86 N.J. 281, 287 (1981), and that the trial court has an "independent duty . . . to ensure that the jurors receive accurate instructions on the law as it pertains to the facts and issues of each case[.]" State v. Reddish, 181 N.J. 553, 613 (2004). An alleged unchallenged error in the jury charge is analyzed "in light of 'the totality of the entire charge, not in isolation.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)).

A.

In accordance with N.J.S.A. 2C:12-3, a person is guilty of third degree terroristic threats:

> (a.) . . . if he threatens to commit any crime of violence with the purpose to terrorize another or to cause evacuation of a building, place of assembly, or facility of public transportation, or otherwise to cause serious public inconvenience, or in reckless disregard of the risk of causing such terror or inconvenience.
>
> (b.) . . . if he threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

17

Defendant argues the jury charge was egregious because it failed to mention N.J.S.A. 2C:12-3(b), even though he was indicted under "N.J.S.[A]. 2C:12-3(a) and/or N.J.S.[A]. 2C:12-3(b)." This omission, according to defendant, is material and contrary to the indictment as the jury could have concluded that satisfying the elements under N.J.S.A. 2C:12-3(a) alone established guilt. There is no legal or factual support for this contention. In charging subpart (a) "and/or" subpart (b), the indictment merely stated defendant was charged with both subparts. However, since there was no evidence that he "threaten[ed] to kill [the taxi driver] with the purpose to put him in imminent fear of death," there was no factual basis for the trial judge to instruct the jury on subpart (b). To do so would have been unnecessary, and possibly confusing to the jury.

Defendant threatened the taxi driver when he stated, "tell him if I see him he's going to end up in St. Jo[seph's Hospital]." It would be unreasonable to conclude the jury would find the statement suggested defendant was threatening to kill the taxi driver with the purpose of placing him in fear of imminent death. Since defendant did not object to this omission at trial, it is presumed that he felt there was no error in the charge and, therefore, was unlikely to lead to an unjust result.

18

Defendant additionally contends the judge incorrectly instructed the jury that the "threatened crime of violence" in question under N.J.S.A. 2C:12-3(a) was aggravated assault. He maintains that an individual cannot "threaten to attempt to commit a crime of violence[,]" and the judge should not have instructed the jury that aggravated assault could be found if defendant "attempted to cause serious bodily injury," while failing to instruct the jury on the definition of serious bodily injury. The jury, he asserts, should have been instructed on the differences between aggravated assault and simple assault because a "threat to commit a disorderly persons offense, such as simple assault, does not" satisfy the "crime of violence" element under N.J.S.A. 2C:12-3(a).

Defendant's argument that "it is impossible for one to threaten to attempt to commit a crime of violence[,]" appears to be a misunderstanding of the statute. N.J.S.A. 2C:12-3(a) requires a threat to commit any crime of violence. The judge properly instructed the jury on aggravated assault stating, "[a] person is guilty of aggravated assault if he attempts to cause serious bodily injury to another." This was appropriate given that defendant allegedly threatened the taxi driver by declaring that if he did not leave town and defendant saw him, defendant would injure him to the extent that he would have to go to the hospital. Although there is no certainty that the threat would have actually resulted in

serious bodily injury to the taxi driver, the jury could reasonably infer that defendant threatened to purposefully engage in conduct that would constitute serious bodily injury. Therefore, defendant has not shown the instruction was clearly capable of creating an unjust result.

B.

Lastly, defendant contends the judge should have sua sponte instructed the jury on harassment as a lesser-included offense of terroristic threats. He stresses the jury could have found his threatening statement that the taxi driver "would end up in St. Jo[seph's Hospital]" constituted harassment under N.J.S.A. 2C:33-4(a). He surmises that even though "the jury may well have felt that [he] did . . . something illegal by stating [the taxi driver] would 'end up in [the hospital,]'" it had no other option than to convict for terroristic threats, despite a lack of evidence that a gun was involved.

Lesser-included offense instructions are intended to avoid "the possibility of an all-or-nothing verdict[.]" State v. Muniz, 118 N.J. 319 (1990); see State v. Short, 131 N.J. 47, 54 (1993) (explaining that a jury "may be tempted to find [a] defendant guilty of a crime he or she did not commit simply because it prefers to convict on some crime rather than no crime at all."). That said, N.J.S.A. 2C:1-8(e) directs that a trial judge "shall not charge the jury with respect to an

included offense unless there is a rational basis for a verdict convicting the defendant of the included offense."  Our Supreme Court has long interpreted the statute's directive as requiring satisfaction of a two-part test: "(1) that the requested charge satisfy the definition of an included offense set forth in N.J.S.A. 2C:1-8(d), and (2) that there be a rational basis in the evidence to support a charge on that included offense."  State v. Thomas, 187 N.J. 119, 131 (2006).  Under N.J.S.A. 2C:1-8(d), an offense is an included offense when:

> (1) It is established by proof of the same or less than all of the facts required to establish the commission of the offense charged; or
>
> (2) It consists of an attempt or conspiracy to commit the offense charged or to commit an offense otherwise included therein; or
>
> (3) It differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission.

In the absence of a request by defense counsel, "a trial [judge] has an independent obligation to instruct on lesser-included charges when the facts adduced at trial clearly indicate that a jury could convict on the lesser while acquitting on the greater offense."  State v. Jenkins, 178 N.J. 347, 361 (2004) (citing State v. Garron, 177 N.J. 147, 180 (2003)).  Conversely, the judge "ha[s] no duty to instruct the jury sua sponte on [an included offense charge if] the

A-2632-16T1

evidence [does] not clearly indicate or warrant such a charge." State v. Savage, 172 N.J. 374, 401 (2002) (citations omitted). The judge is not required to "meticulously sift through" every trial record, just in case an unquestioned charge might be supported. Thomas, 187 N.J. at 134 (quoting State v. Choice, 98 N.J. 295, 299 (1985)).

In accordance with N.J.S.A. 2C:33-4, harassment is committed when a person:

> a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Harassment requires that the defendant act with the purpose of harassing the taxi driver. J.D. v. M.D.F., 207 N.J. 458, 486 (2011). A judge may use "[c]ommon sense and experience" when determining a defendant's intent. State v. Hoffman, 149 N.J. 564, 577 (1997).

Guided by these principles, we conclude that the evidence presented at trial did not support a lesser-included charge of harassment. The accusations

22

against defendant were more involved than mere "harsh communication" or the possibility of "offensive touching."  One witness testified that he had a gun and pointed it at the taxi driver.  Additionally, the testimony that an irate defendant threatened to put the taxi driver in the hospital, reasonably inferred violent behavior rather than an "offensive touching or striking."  Consequently, the absence of a lesser-included harassment charge did not have a clear capacity to bring about an unjust result.

In sum, taken as a whole, the jury charges were appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION