**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4695-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GYASI ALLEN, a/k/a
EYASI ALLEN, GYASI I.
ALLEN, TYRE GYASHI,
GYASI TYRE, and DRAMA,

     Defendant-Appellant.

_____

     Submitted January 26, 2022 – Decided February 25, 2022

     Before Judges Geiger and Susswein.

     On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 17-02-0125.

     Alan Dexter Bowman, attorney for appellant.

     Camelia M. Valdes, Passaic County Prosecutor, attorney for respondent (Marc A. Festa, Chief Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury found defendant Gyasi Allen[1] guilty of murder, conspiracy to commit murder, and two related weapons offenses. He appeals his conviction, claiming that his right to be present at all critical stages of his trial was violated and the trial court committed plain error by admitting a stipulated identification of defendant as the person depicted on a surveillance video. We affirm.

Excepting as noted, a Passaic County grand jury returned an indictment that charged defendant and co-defendant Wade with: second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count one); first-degree knowing or purposeful murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count two); first-degree conspiracy to commit murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3 (count three); second-degree possession of a weapon for an unlawful purpose, 2C:39-4(a)(1) (count five); fourth-degree unlawful taking of a means of conveyance, N.J.S.A. 2C:20-10(d) (count seven); and fourth-degree certain persons in possession of a firearm, N.J.S.A. 2C:39-7(b)(1) (count eight). (Da11). Counts four and six charged only Wade and counts seven and eight charged only defendant.

---

[1] For clarity, we refer to Allen as defendant and co-defendant Jamal Wade by his surname. They were tried in a single trial.

We derive the following facts from the evidence adduced at trial. At approximately 11:50 p.m. on September 30, 2016, Paterson Police Department (PPD) officers responded to a shooting in the area of 12th Avenue and E. 23rd Street in Paterson. They found Cosmiek Gee unresponsive in the driver's seat of his vehicle with apparent gunshot wounds. Gee succumbed to his injuries despite efforts to render aid at the scene. There were no eyewitnesses to the shooting.

Police recovered surveillance video of the shooting from a camera at 12th Avenue and E. 22nd Street. The video, timestamped at 11:46 p.m., showed a dark Audi sedan drive out of William Street and approach Gee as he was entering his car. The passenger of the Audi, who was wearing a light gray hooded sweatshirt under a black jacket, exited the Audi and fired several gunshots into Gee's car.

Police collected additional surveillance video of other locations that showed the movements of defendant and Wade before, during, and after the shooting. During his statement to police, Wade identified himself in a video recorded at a liquor store located on 10th Avenue between 22nd and 24th Streets, which was corroborated by a police officer who knew him. Defendant was identified by PPD Officer Jason English as the person depicted in a surveillance video in front of the same liquor store. Based on these

identifications, police were able to connect the defendants' movements depicted in other surveillance video based on the timeline and their clothing.

Prior to the shooting, New Jersey State Police (NJSP) were investigating the theft of a black 2012 Audi A6 sedan that was stolen from Summit on September 16, 2016. State Police located the car, placed a GPS tracker on it, and tracked its movements from September 20 to October 3. Data generated by the GPS tracker showed the Audi was stationary on William Street beginning at 11:28 p.m., then moving in the area of 362 E. 22nd Street at 11:47 p.m., which is located about three to four blocks from the shooting. The GPS showed the Audi moving from 11:47 p.m. until it stopped at 11:53 p.m. at 15th Street, where it remained for almost seven hours. A video depicted defendant wiping the door handles with a rag. Attempts to obtain fingerprints and DNA from the Audi were unsuccessful.

In addition, a surveillance video showed the Audi parked on William Street from 11:06 p.m. until 11:47 p.m. At 11:46 p.m., the video shows the Audi's headlights turn on as Gee enters his car. The video captured the Audi driving out of William Street into the intersection where the shooting occurred.

FBI Special Agent David Ajit analyzed historic cell site data to determine the location of Wade's cell phone at times relevant to the shooting.

4

He testified that four telephone calls on Wade's cell phone could have coincided with the locations indicated by the GPS tracking data.

PPD Detective John Scully processed the crime scene. He marked the locations of nine shell casings found on the street near Gee's vehicle. Scully photographed the crime scene, including the bullet holes in the driver's side door of Gee's car. The shell casings were all .45 caliber. NJSP Detective Edward J. Burke testified as an expert in toolmark identification and opined that all nine shell casings were fired from the same gun.

Dr. Lyla Perez, the State's expert in forensic pathology, testified that Gee sustained three gunshot wounds to his torso. One bullet went through Gee's heart, and another went through his aorta. Dr. Perez opined that the cause of death were the gunshot wounds, and the manner of death was homicide.

PPD Detective Anthony Petrazzulo testified that he searched for video evidence of the homicide. He accessed the camera located at the corner of 12th Avenue and E. 23rd Street to see if there was evidence of the homicide. Using this footage as a starting point, Petrazzulo backtracked the Audi and defendants' movements earlier that night. Discussions with other investigators and the surveillance video led to focusing on the liquor store located on 10th Avenue, which had cameras near it that faced E. 23rd and 24th Streets. Petrazzulo testified that the video showed two males walking towards the

5

liquor store in clothing which showed they were the same individuals seen on multiple videos. Petrazzulo showed the video to PPD Detective Jimmy Maldonado, who identified Wade as the driver of the Audi. Petrazzulo then showed the video to English, who identified defendant as the Audi's passenger.

The issues raised by defendant in this appeal center on the following aspects of the trial. On the first day of trial, the prosecutor and defense counsel discussed certain testimony with the court. However, defendant and Wade did not arrive to court on time because they were "not ready" for transport from the jail.

In the meantime, the judge, the prosecutor, and defense counsel discussed what they labelled "a housekeeping matter" involving the defendants being identified by police officers on a surveillance video. The prosecutor explained that defendant was identified by several officers who watched the video and "recognized him from prior police encounters." The prosecutor and defendant's counsel proposed that English, who had no other involvement in the case other than recognizing defendant from the video, testify as a lay witness as to identification. Wade's counsel stated he had no problem having his client being placed at the liquor store because Wade admitted it was him in the video and counsel would rather have one police officer, rather than four testify that they knew it was Wade on the surveillance video.

6

Before the court decided the issue, it noted that defendant had not yet arrived in court and asked defendant's counsel if he was waiving defendant's appearance during the discussion of this issue. Counsel responded that he waived defendant's appearance and stated that having English testify as a lay witness was "a much more prudent way to proceed" because "it doesn't take up the [c]ourt's time unnecessarily" and would avoid an entire hearing. He indicated that counsel would work out the exact details amongst themselves. Later, while discussing how English's name should appear on the witness list, counsel and the prosecutor agreed that it should not indicate he was affiliated with the police department. Counsel stated that the attorneys would "come up with a fiction" they could "both live with as to what, [English's] testimony is going to be."

The prosecutor and the court expressed difficulty in choosing an identification instruction because many did not apply, and it was "not like a one-on-one in person identification." The court commented that English's testimony "isn't even being offered for the purposes of identification. It's really just to show why he was arrested. Because . . . [in the] instruction we're giving [the jury], we're saying [it was] . . . just to give [an] . . . idea as to why they were identified, but it's up to [the jury] to decide . . . if it's accurate."

Prior to resting, the prosecutor read the identification stipulation into evidence. The identification stipulation stated: "It is agreed by the parties that a video was shown to an individual named Jason English who works for the City of Paterson and that he identified Gyasi Allen as the person in the video wearing the black jacket outside of 350 Liquors." Neither defense counsel objected to the stipulation.

Defendant and Wade did not testify or produce any witnesses at trial. During summation, defendant's counsel criticized the identification and highlighted the jury's ability to choose whether to believe it, stating:

> So ladies and gentlemen, let's talk about those two videos and let's start with the question of whether the man exiting the car at 350 Liquor Store on 10th Ave is my client . . .
>
> [The man exiting the liquor store] is wearing a very distinctive black jacket. The black jacket is over a white sweatshirt with a white hoodie. He stands out . . . because of his jacket. It is dark black and it contrasts dramatically with his white hoodie and white pants. This is the man they say is my client. But it's not true.
>
> When you look carefully at the video, you'll see that it's difficult to get a good look at the person's face. You'd probably have to know the person to tell who he is. So what do we get, ladies and gentlemen? We get a stipulation read to you from a guy named Jason English who claims he recognizes him as my client.
>
> We don't know anything about English other than the fact that he didn't testify. We do know that if

he did testify, he would say that the guy in the black jacket is Gyasi Allen. But we don't get a chance to assess his credibility. We don't get to cross-examine him. We have no opportunity to ask him how he could possibly make that kind of identification. We only know that if he were to come to court, he would say it's him.

[T]hat's not the kind of evidence that you can rely on to make a judgment in something as serious as a murder trial. This is a critical identification . . . because the prosecution is going to argue that the man with the black jacket outside the liquor store is the same guy who got out of the Audi on 7th Ave an hour later, after the murder.

The court provided the following instruction regarding the stipulations: "One, the parties have agreed to certain facts. The jury should treat those facts as undisputed. That is, the parties agree that those facts are true. Two, as with all evidence, undisputed facts can be accepted or rejected by the jury in reaching a verdict."

The jury found defendant guilty on all counts. Defendant was sentenced to an aggregate forty-year term subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Counts three and four were merged into count two.

This appeal followed. Defendant raises the following points:

POINT I

APPELLANT WAS DENIED HIS RIGHT TO BE PRESENT AT ALL CRITICAL STAGES OF TRIAL. (Not raised below).

9

THE TRIAL COURT COMMITTED PLAIN ERROR IN ADMITTING THE HEARSAY STIPULATED IDENTIFICATION.  (Not raised below).

Defendant contends that he was not present in court during the negotiation of the identification stipulation on November 8, 2018.  The record shows otherwise.  The transcript of the proceedings that day reveals that while defendant was not present in court, counsel and the court discussed the parameters of English's expected testimony.  A stipulation in lieu of his testimony was not discussed or mentioned that day.

The record further reveals that defendant and Wade were present in court during discussion regarding English's identification of defendant and two additional stipulations on December 11, 2018.  The transcript shows the stipulation that English identified defendant in the surveillance video from the liquor store was negotiated and formulated by the parties in the presence of defendant and Wade.  Later that day, the stipulation was read to the jury in the presence of defendant and Wade.  Defendant's claim that he unaware of the stipulation until he reviewed the transcripts after the trial is thus belied by the record.

In addition, defendant and Wade waived their appearances at the charge conference, where the stipulation was discussed in the context of the

identification instruction, including a cross-racial instruction. Aside from waiving his appearance, defendant has not demonstrated how he was prejudiced by not being present at the charge conference.

Defendant did not object to his absence during the discussion of English's expected testimony or the admission of the stipulation in evidence, waived his appearance at the charge conference, and did not object to the jury charges. "When a defendant fails to object to an error or omission at trial, we review for plain error. Under that standard, we disregard any alleged error 'unless it is of such a nature as to have been clearly capable of producing an unjust result.'" State v. Funderburg, 225 N.J. 66, 79 (2016) (quoting R. 2:10-2). "The mere possibility of an unjust result is not enough." Ibid. To warrant reversal, the error must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached[.]" State v. Trinidad, 241 N.J. 425, 445 (2020) (quoting State v. Macon, 57 N.J. 325, 336 (1971)); accord State v. Dunbrack, 245 N.J. 531, 544 (2021).

Defendant argues he was denied the right to be present at all critical stages of trial. As we have explained, however, defendant was present when the stipulation was negotiated and formulated in court. He acknowledges that counsel waived his appearance on November 8, 2018, and that he waived his appearance at the charge conference, but contends counsel's calculated strategy

11

was "unfathomable," "eliminate[d] confrontation," and "tantamount to a confession." Defendant asserts the stipulation "basically constituted a plea of guilty to the indictment" and that "strategic efficacy [was] lacking in all regards." Defendant claims he did not "willingly and knowingly absent himself during negotiations of the stipulation" and argues these negotiations were a critical stage of trial that render the stipulation null and void because he was not aware of them.

On this record, counsel waived defendant's appearance when the identification testimony was discussed on November 8, 2018. Under Rule 3:16, a defendant may waive his appearance at a pretrial proceeding or at trial. The discussion that day did not include negotiation or formulation of the stipulation. Defendant and Wade were present in court on December 11, 2018, when the identification stipulation and two other stipulations were discussed, formulated, and agreed upon. Both defendant and Wade waived their appearances at the charge conference. Neither objected to the stipulations or the jury charges.

Defendant also argues that the identification stipulation violated his right of confrontation. On this record, we disagree. "The Sixth Amendment of the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee that, in a criminal trial, the accused has the right to 'to

12

be confronted with the witnesses against him.'" State v. Williams, 219 N.J. 89, 98 (2014). At trial, defendant did not argue that his right to confront English was violated. Instead, the stipulation obviated the need for live testimony. "The right of confrontation, like other constitutional rights, may be waived by the accused." Ibid.

> Defense counsel, many times as a matter of trial strategy, will refrain from objecting to hearsay that may inure to the advantage of the defendant. Because counsel and the defendant know their case and their defenses, they are in the best position to make the tactical decision whether to raise a Confrontation Clause objection.
>
> [Id. at 99.]

See also State v. Nyhammer, 197 N.J. 383, 413-14 (2009) (finding no Confrontation Clause violation where defendant chose "strategic course" not to cross-examine victim about accusations in videotaped interview).

The record shows that is precisely what occurred here. Defense counsel elected not to compel English to testify regarding his identification of defendant on the surveillance video. "It therefore makes perfect sense that '[t]he defendant always has the burden of raising his Confrontation Clause objection.'" Williams, 219 N.J. at 99 (emphasis in original) (citing Melendez-Diaz v. Massachusetts, 557 U.S. 305, 326 (2009)). "It is the defendant's

13

choice 'to assert (or forfeit by silence) his Confrontation Clause right.'" Ibid. (quoting Melendez-Diaz, 557 U.S. at 326). Defendant failed to do so.

"Additionally, when a defendant later claims that a trial court was mistaken for allowing him to pursue a chosen strategy—a strategy not unreasonable on its face but one that did not result in a favorable outcome—his claim may be barred by the invited-error doctrine." Id. at 100. "The doctrine of invited error does not permit a defendant to pursue a strategy of allowing [identification by stipulation]—hopefully to his advantage—and then when the strategy does not work out as planned, cry foul and win a new trial." Id. at 101.

Defendant further argues that English's unrecorded identification violated Rule 3:11. We disagree. The version of Rule 3:11(a) in effect at the time of the trial in 2018, stated: "An out-of-court identification resulting from a photo array, live lineup, or showup identification procedure conducted by a law enforcement officer shall not be admissible unless a record of the identification procedure is made."[2] The identification procedure used here did not involve a photo array, live lineup, or showup. Nor did it involve identification by an eyewitness. Rule 3:11 is directed at the recordation of an out-of-court identification by an eyewitness during a police investigation, to

_____

[2] Rule 3:11 was amended May 26, 2020, to be effective June 8, 2020.

A-4695-18

prevent investigators from using suggestive identification techniques. State v. Green, 239 N.J. 88, 100-02 (2019).

Moreover, here, there were no system variables to document. See State v. Henderson, 208 N.J. 208, 289-94 (2011) (holding that when defendants can show some evidence of suggestiveness tied to a system variable, they are entitled to explore all relevant variables to try to challenge the admissibility of the identification).

We also reject defendant's claim that the video identification was inadmissible hearsay. Defendant did not object to the admission of the stipulation—he agreed to the language and admission of the stipulation. Any hearsay objection was waived. Moreover, "where the errors were invited or induced by defense counsel they will not serve as a basis for reversal on appeal." State v. Douglas, 204 N.J. Super. 265, 275 (App. Div. 1985); accord State v. A.R., 213 N.J. 542, 561-62 (2013).

On this record, we discern no plain error. The admission of the officer's identification of defendant in the surveillance video by way of stipulation, viewed in the context of the other evidence presented during the lengthy trial, was not clearly capable of causing an unjust result by leading the jury to a result it otherwise would not have reached. R. 2:10-2.

The court did not conduct a hearing to determine if defendant knowingly agreed to the identification stipulation and waived his appearance in court on November 8, 2018, when English's identification of defendant on the surveillance video was discussed. The record does not disclose the communications between defendant and his attorney regarding defendant's absence in court that day, the impact of the stipulation, or the strategic decision to utilize the identification stipulation in lieu of live testimony subject to cross-examination.

Because counsel waived defendant's appearance in court and thereafter agreed to the language of the stipulation, defendant is essentially claiming ineffective assistance of counsel. Defendant claims the use of the stipulation was strategically unfathomable. These issues are largely "predicated on 'allegations and evidence that lie outside the trial record.'" State v. Petrozelli, 351 N.J. Super. 14, 22 (App. Div. 2002) (quoting State v. Russo, 333 N.J. Super. 119, 138 (App. Div. 2000)). They are more appropriately addressed through at an evidentiary hearing in a post-conviction relief (PCR) proceeding. See State v. Preciose, 129 N.J. 451, 460-62 (1992). We therefore decline to consider defendant's ineffective assistance of counsel claims, without prejudice to raising these issues in a timely-filed petition for PCR.

16

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-4695-18